L. A. ANDREW, Superintendent of Banking, Appellant, v. HUXLEY SAVINGS BANK et al., Appellees.

No. 41956.

JUNE 20, 1933.

REHEARING DENIED SEPTEMBER 29, 1933.

Edward L. O'Connor, and Nichol & Nichol, for appellants.

C. B. Hextell, for appellee L. O. Larson.

Lee, Steinberg & Walsh, for appellees.

EVANS, J.—The Huxley Bank closed its doors on March 13, 1931. It had operated for many years upon a capital of $15,000. L. O. Larson was its president and its largest stockholder, owning forty-four shares. He had become greatly debilitated by old age and sickness. He was greatly worried over the financial situation. He had become too ill to attend to his duties as president, and he desired to terminate his connection with the bank, and negotiations were had between him and the directors to that end. These negotiations were laid before the banking department. The contract finally entered into was formulated by the banking department and was entered into with its approval. In substance, Larson agreed to turn over his stock and to pay future assessment, if any, upon the super-

added liability. For the purpose of securing, as he claims, his superadded liability if assessment should be made, he put up two promissory notes of the face value of $4,200. These were delivered to the bank. These were interest bearing. This transaction was had on December 29, 1930. Ten days before the bank closed its doors, one of these notes was collected and the proceeds later passed into the hands of the receiver as a supposed asset of the bank. The other note of a face value of $2,160 passed into the hands of the receiver and is still held by him. It is conceded that the note is good and collectible both in principal and in interest. There is an apparent discrepancy in the record, in that the fund is referred to as $4,200, whereas 100 per cent assessment would amount to $4,400. This discrepancy is not explained in the record. But the discussions on all sides treat the two notes as the equivalent of the $4,400 assessment, and no claim is urged for any apparent difference as between $4,200 and $4,400. We shall therefore treat the fund as the exact equivalent of the assessment.

The contract entered into on December 29, 1930, was as follows:

"We, the undersigned, the Board of Directors of the Huxley Savings Bank of Huxley, Iowa, hereby agree with L. O. Larson, also of Huxley, Iowa, that upon the transfer of 44 shares of stock which said L. O. Larson holds in the Huxley Savings Bank of Huxley, Iowa, in blank and upon the payment of forty-two hundred dollars (which payment is to take the form of a certain promissory note to the amount of $2,160 given July 22, 1929, and due July 22, 1932, given by Mrs. J. M. Brown and C. Rimathe of Slater, Iowa, properly endorsed, and a personal note of $2,040 which is the balance of the $4,200 given December 29, 1930, and due March 1st, 1931, signed by said L. O. Larson and Lewis L. Larson and Henry A. Larson) then we the undersigned, the Directors of the Huxley Savings Bank of Huxley, Iowa, agree that we will relieve the said L. O. Larson of all responsibility which he as Director and President of said bank has been along to guarantee for the State Banking Department and also of all future liability as regards his stock.

Signature of L. O. Larson.

L. O. Larson.

Witness for L. O. Larson,
    Lewis L. Larson.
    Henry A. Larson.

Signatures of the Directors of the Huxley Savings Bank,

> O. J. Kalsem.
> H. J. Hemmingson.
> J. F. Kalsem.
> B. S. Hill.
> Ira J. Melaas.
> A. L. Ryerson."

The transaction had purported to be recited also in the records of the board of directors at their monthly meeting. This record was as follows:

"Whereas L. O. Larson tendered to the Directors of the Huxley Savings Bank, that due to failing health, he proposed to turn over all his stock in said Huxley Savings Bank (to the amount of forty four shares) to said Huxley Savings Bank together with Forty two hundred dollars ($4,200) in cash or its equivalent which cash was to apply on any future assessment which might possibly come. His proposition being that he then wished to be excused on any and all future liability. His proposition being deemed acceptable by the Directors of the Huxley Savings Bank they then entered in a written agreement with him which agreement is hereto attached and forms a part of these minutes.

"Due therefore to such agreement entered into with said L. O. Larson therefore the term of said L. O. Larson as President and Director of the Huxley Savings Bank automatically ceased, but due to the fact that the annual meeting came within a few days it was deemed advisable to leave the selection of another Director to fill the vacancy until that time.

"Whereas, an agreement, mentioned above and attached hereto, has been entered into by and between the Huxley Savings Bank, Huxley, Iowa, by its Board of Directors and L. O. Larson whereby said L. O. Larson has surrendered his 44 shares of stock in said bank and has paid cash or its equivalent in the amount of $4,200.00 both contributions being made to said bank and in consideration for which said bank has released said L. O. Larson from all liability in connection with his signing a certain Guarantee, dated June 28, 1929, given to said bank and as a further consideration, said Bank has released said L. O. Larson from all liability in connection with the ownership of said 44 shares of stock in the Huxley Savings Bank, it being understood that said cash settlement is accepted in lieu of any assessment present or future and

"Whereas other voluntary contributions are to be made to said Bank by other Directors and Stockholders, funds to be used in purchasing out certain criticized assets, and

"Whereas, the proceeds of said 44 shares of stock, when sold, are to be thrown into undivided profits account of said Bank, now therefore be it Resolved that H. J. Hemmingson and O. J. Kalsem be and are hereby appointed as trustees for holding said 44 shares of stock until such a time as same may be advantageously disposed of, said trustees having the power to vote and transfer such stock, without personal liability of any kind or nature on either of said individuals and that said stock is the absolute property of said Huxley Savings Bank."

Larson had nothing to do with this record, nor was he present at the meeting. This record is not wholly consistent with the contract in its legal implications. But that fact might not be readily discoverable to a layman. The case in its analysis presents two or more alternatives. If we say that the $4,200 fund, as represented by the two notes, was in the nature of a pledge or security for the performance of his agreement by Larson, then the bank was a mere trustee thereof. The bank parted with no present consideration therefor. If a trust fund, it never became a part of the assets of the bank. As such it passed into the hands of the receiver, and Larson was entitled to impress a trust thereon. In such event the fund would pay the assessment. This would end the litigation and render unnecessary the consideration of other aspects thereof. Furthermore, if the directors should be held liable on Larson's cross-petition they would be entitled to be subrogated to the right of Larson in the trust fund. That would end the litigation. Such, however, was not the theory on which the district court reached its conclusion.

Another alternative presented is that, if the receiver, as plaintiff herein, already had the trust fund in his possession, it would be his duty to apply it to the discharge of the superadded liability. A third alternative is that under section 9265, the bank officials had a right to reduce the capital of the corporation subject to the approval of the banking department. That section provides as follows:

"There shall be no reduction of capital or cancellation of stock, until said reduction or cancellation shall first be approved by the superintendent of banking."

What was done by the banking officials was so done with the approval of the banking department. No reason is conceivable why it should not be approved by the banking department. It was obviously beneficial to the bank whether it should continue as a going concern or whether it should ultimately fail to do so. The utmost liability that could accrue as against Larson was thereby provided for.

The theory of recovery urged by the plaintiff is that there is no power in any bank or its officers, and none in any public official, whereby a stockholder may bargain against his superadded liability; that even a transfer of his stock will be held void unless the transferee is financially responsible. At this point plaintiff relies upon that line of cases which hold that stockholders who transfer their shares to an insolvent may not thereby escape their liability. It is further contended by the plaintiff that in this action he is representative of the *creditors*, as defined in section 9251; whereas, in his capacity as a receiver and administrator of the insolvent bank, he is a representative primarily of the bank *depositors*. The distinction between a depositor and a creditor under the statute is that a depositor is a preferred distributee of the assets of the insolvent. He takes precedence over a nondepositor creditor. On the other hand, the avails of the superadded liability under 9251 operate in favor of *all* creditors on an equal basis regardless of whether they are depositors or not. On this premise it is naturally argued that the receiver acts in two capacities and is representing different interests and that what he does in one capacity is not binding upon him in the other capacity. It is obviously true that the receiver may find himself involved in inconsistencies when the respective interests of those whom he represents conflict with each other. He may in such a case find himself in litigation with himself in his two separate capacities. The interest of depositors as a class may conflict with the interest of creditors as a class. The statute has not foreseen such situation, and has made no provision for it. It so happens in this case that the list of creditors put in evidence by the plaintiff comprises depositors exclusively. We may therefore properly disregard the conflicting capacities and treat the plaintiff as representing the same interests in both capacities. If, as a representative of the *depositors*, he is in possession not only of the bank assets, but of trust funds, and if these trust funds ought to be held by him in his capacity as representative of *creditors*, he may properly hold the

one fund in his right hand and the other in his left and may finally deliver each to its appropriate beneficiary.

The record before us presents a case of clean hands and good conscience. There is no taint of fraud at any stage of it. Larson did not attempt to avoid any legitimate liability. On the contrary, he made forehanded provision for the contingency. The bank officials were open and aboveboard in all their dealing. They did not attempt to cover up anything. They informed the banking department fully and frankly of all that was in their mind. The method adopted was not calculated to injure any depositor or creditor. What would have been available to any and every creditor in case Larson had continued to hold his stock is still available to each of them pursuant to Larson's plan. What the court is called upon to do is simply to reinstate the plan and to carry it out according to its original intent. In view of the identity of interests of the beneficiaries represented by the plaintiff in each of his capacities, we have no need to determine whether the trial court predicated decision upon a correct theory. It is enough for our present purpose that all of the alternatives of the case support the result reached by the trial court.

The record is voluminous. The fact that the directors asked to reform the contract opened the door to oral evidence. The result is that the whole field of evidence is covered both by the written and the oral testimony. The evidence, however, is not greatly in conflict. We are satisfied from the evidence that on December 29, 1930, all the parties to the transaction believed that their bank would weather the gale. The directors deemed the surrender of Larson's stock to be advantageous to the bank. They named two trustees to whom the transfer was made. They were intending to sell the same to new stockholders for the benefit of the corporation.

To our minds the controlling facts may be summed up briefly as follows: Larson agreed to assume the risk of the superadded liability, if any. He put up the two notes for the very purpose of meeting the contingency. In the hands of the bank they were in the nature of collateral put up as security for the performance of his pledge. The fact that the bank's assistant cashier entered them upon his books as though they were assets of the bank did not change their trust character. Their original purpose was not changed thereby. They came into the hands of the bank for the very purpose of meeting the contingency if later created by the closing of the

bank. One of these notes and the proceeds of the other passed into the hands of the plaintiff as statutory receiver. Though the plaintiff is acting in two capacities whereby the beneficiaries represented by him in the two capacities might not be identical, yet in this case they *are* identical, in that the *depositors* are the only *creditors*. For this reason the dual character of plaintiff's representation may be ignored. The material fact is that he has the funds in one hand or the other. If he holds in one hand funds that belong to the other, equity will approve a voluntary change; or require one if involuntary. "Let not thy left hand know what thy right hand doeth" is not a rule of equity.

Predicated upon the foregoing we hold that the plaintiff must be deemed to have in his hands the full amount of the notes and their proceeds for the purpose of paying the superadded liability upon the Larson stock, and that the funds in his hands in both capacities should be distributed accordingly.—Affirmed.

KINDIG, C. J., and ALBERT, DONEGAN, CLAUSSEN, and STEVENS, JJ., concur.