STATE ex rel. BOARD OF RAILROAD COMMISSIONERS, Appellant, v.
STANOLIND PIPE LINE COMPANY, Appellee.

No. 41579.

JUNE 20, 1933.

J. H. Henderson, Commerce Counsel, and Stephen Robinson, Assistant Commerce Counsel, for appellant.

Parrish, Cohen, Guthrie & Watters, and G. H. Woodward, for appellee.

KINDIG, C. J.—The defendant-appellee, Stanolind Pipe Line Company, is a foreign corporation operating a pipe line system for a distance of approximately eighteen miles over the southeastern corner of Iowa. This pipe line system is a trunk line, extending from the Mid-Continent oil fields of Oklahoma and Texas to refineries at Whiting, Indiana. Through this line, the appellee transports crude petroleum exclusively in interstate commerce. No part of the oil thus transported is received or discharged within the state of Iowa. There is no controversy over the proposition that the appellee company, in operating the pipe line, is engaged exclusively in interstate commerce. In constructing its system in Iowa the appellee has purchased a private right of way from private property owners, and, in conjunction therewith, uses public highways and public property of the state.

According to the stipulation of the parties, the "pipe lines (are) located (across) the tracks of the Chicago, Rock Island & Pacific Railway Company, the tracks of the Chicago, Burlington & Quincy Railroad Company, U. S. Highway No. 161, a paved highway, U. S. Highway No. 61, one primary graveled road, thirteen secondary roads, the Des Moines River, the Mississippi River, and four creeks". Hence it is said by the state that the pipe line system comes within the provisions of, and is controlled by, chapter 383-D1 of the 1931 Code. When building and operating its pipe line system, however, the appellee ignored the provisions of the said chapter of the Iowa Code. Under the provisions of the chapter, a permit must be obtained by the pipe line company, but the appellee refused to procure the permit. Furthermore, the chapter requires an annual license fee, but the appellee refused to pay the same. Consequently the present proceedings were commenced by the state to enjoin the appellee, as before explained, from operating its pipe line system in Iowa without complying with the provisions of chapter 383-D1 of the 1931 Code. Because the district court refused to sustain the contention of the state, it appeals.

It is said by the state that the judgment of the district court should be reversed because the building and operation of the appellee's pipe line system clearly comes within the provisions of said chapter. On the other hand, it is contended by the appellee that the chapter, so far as thus applied, is unconstitutional because the Iowa law is in conflict with the third paragraph of section 8, Article I, of the Constitution of the United States. So far as material, this constitutional provision is:

"The Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."

Such conflict arises, the appellee declares: First, because sections 8338-d2 and 8338-d3 of the above-named chapter of the Iowa Code require the appellee, as a condition precedent to transacting business in Iowa, to apply for and obtain from the board of railroad commissioners a permit authorizing it to do the business contemplated; second, because sections 8338-d6 to 8338-d12, inclusive, of the said chapter, require the appellee, as a condition precedent to transacting its pipe line business, to pay all costs and expenses of the proceedings leading up to the granting of the permit,

together with the permit fee of one dollar per mile for each inch of diameter of such pipe line located in the state of Iowa; third, because section 8338-d21 of the said chapter requires the appellee, as a condition precedent to transacting its business in Iowa, to agree "that the state of Iowa may levy and impose such general property taxes and/or taxes on gross receipts and/or taxes on net income as the general assembly may hereafter prescribe"; fourth, because section 8338-d13 of the said chapter requires the appellee to pay to the railroad commissioners for "the privilege and right to use or cross any of the public properties referred to in this chapter, and *for the right to operate in the state of Iowa,* * * * an annual license fee in the sum of fifty cents per mile of pipe line or fraction thereof, for each inch of diameter of such pipe line located in the state of Iowa, said license fee to be paid for the calendar year in advance and before January first of that year"; and, fifth, because that chapter attempts to levy a tax designated a license fee which is in fact a property tax upon the appellee's property, and thereby constitutes unlawful double taxation for the reason that said property is already subject to ad valorem taxes under and by authority of chapter 340-D1 of the 1931 Code of Iowa (sections 7103-d1 to 7103-d19).

In response to the appellee's contention, it is answered by the state: First, that chapter 383-D1 of the 1931 Code does not violate the commerce clause of the United States Constitution, in requiring appellee to obtain a permit for the use of the state's highways and other public properties; second, that the state has a right to supervise and control the appellee's pipe line system under the general police power; third, that the state may inspect and make reasonable regulation of the appellee's pipe line and charge a reasonable fee therefor; fourth, that the state may charge the appellee for the use of its own public properties; and fifth, that the license fees demanded do not amount to the taxation of the appellee's property.

This, in brief outline, sets out the controversies involved.

 I. Consideration will first be given to the appellee's contention that sections 8338-d2 and 8338-d3 of the 1931 Code are prohibited by the commerce clause of the United States Constitution. These sections contain the following provisions:

"8338-d2. No pipe line company shall construct, maintain or operate any pipe line or lines outside of cities and towns under, along, over or across any public highway, grounds, waters or streams

of this state without procuring from the board of railroad commissioners a permit granting permission so to do.

"8338-d3. Any pipe line company authorized to engage in business in this state before engaging in its said business in this state shall file with the board of railroad commissioners its verified petition asking for a permit to construct, maintain and operate its pipe line or lines along, over or across the public highways, grounds, waters and streams of this state *or the lands of any person*, company, or corporation and to acquire the necessary interests in real estate for such purposes." (The italics are ours.)

 It will be seen, therefore, that section 8338-d2 requires that the appellee obtain a permit from the state railroad commissioners before it may construct, maintain, or operate its pipe lines under, along, over, or across any public highway, grounds, waters, or streams of this state. That section, then, relates only to the public property of the state, as distinguished from private property belonging to persons, companies, or corporations. There is nothing in the section under consideration which prohibits the appellee from operating its pipe lines upon the private properties of the state. As set forth in the preliminary statement, the appellee's pipe line system in Iowa crosses many public highways, the Des Moines river, and four creeks. These pipe lines are so located and laid that under ordinary conditions they do not interfere with the operation, maintenance, or drainage of the highways. But the lines are subject to breakage, leakage, and electrolysis which may affect and interfere with the operation, maintenance, drainage, and safety of the highways.

While it is true that the appellee is engaged exclusively in interstate commerce, yet that does not mean that it, without compensation, can appropriate and use public properties belonging to the state. The Fifth Amendment to the Constitution of the United States provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of

life, liberty, or property, without due process of law; *nor shall private property be taken for public use, without just compensation."* (The italics are ours.)

Private property, then, cannot be taken for public use without compensation. This is true whether the taking is by condemnation proceedings or otherwise. Western Union Telegraph Company v. Pennsylvania Railway Company, 195 U. S. 540, 25 S. Ct. 133, 49 L. Ed: 312, 1 Ann. Cas. 517. Although the public property of the state, generally speaking, comes within the definition of public, as distinguished from private, property, yet, within the meaning of the Fifth Amendment to the Constitution of the United States, such public property may, under proper circumstances, constitute private property. Such property, although only an easement, being private under the Amendment, cannot be taken, it has been held, without compensation. Wayne county, Kentucky, v. United States, 53 Ct. Cl. 417; United States v. Wayne county, Kentucky, 252 U. S. 574, 40 S. Ct. 394, 64 L. Ed. 723.

It was said in Coyle v. McIntire, Attorney General, 7 Houst. (Del.) 44, 30 A. 728, 40 Am. St. Rep. 109, quoted in Wayne County, Kentucky v. United States, 53 Ct. Cl. 417, reading on page 424:

"The municipality may hold property in which all the inhabitants of a state or of a county may be said to have an interest in some respect, but not as owners or proprietors. And it may also hold property in which the inhabitants of the municipality alone may properly be said to have an interest. Both classes of property are public—the one, as to the people of the whole state or county; the other, more particularly, as to the inhabitants of the municipality. It is only in this sense that the words 'public' and 'private' can with propriety be applied to such property when held by a municipality. Although the property held for the municipality is in fact public, as common to all the inhabitants of a city, it nevertheless may justly be said to be private property as being such property as is exempt from being taken or applied to any other public use by the state, or by authority of the state, without compensation being made."

In view of the Fifth Amendment to the Constitution of the United States, the commerce clause of that Constitution does not grant the appellee, although operating a pipe line system for the

conveyance of interstate commerce, the privilege of using, for the purpose of that commerce, private property, or public, on the same basis as private property without compensation. See Northwestern Telephone Exchange Co. v. City of St. Charles (C. C.) 154 F. 386; Sunset Telephone & Telegraph Co. v. City of Pasadena, 161 Cal. 265, 118 P. 796. No claim is made by the appellee that it has condemned this public property under federal authority, but it relies alone on the commerce clause in the United States Constitution; nor does the appellee claim that there is federal authority for such condemnation, other than implied in the commerce clause.

Nevertheless, it was said in Haskell v. Cowham (C. C. A. 8th Circuit) 187 F. 403, reading on page 408:

"No state may by means of its police power, or its proprietary power, over highways or by means of any of its other powers, erect and maintain impassable barriers against interstate commerce along its borders or through its body in the face of the grant to the nation of the power to regulate that commerce; for all the powers of the state are subordinate to this power of the nation and to its will that such commerce shall be free."

Preceding this quotation, the Circuit Court of Appeals, in the Eighth Circuit, further said, on pages 407 and 408 of the Federal Reporter:

"The power to regulate commerce among the states was carved out of the general sovereign power when the national government was formed and granted by the people by means of the Constitution to the Congress of the United States. Article 1, section 8. That grant is exclusive. The nation may exercise the power thus given to its utmost extent, and no state may lawfully restrict or infringe this grant or the plenary exertion of this power, for they are paramount to all the powers of the state, and they inhere in the supreme law of the land. Interstate commerce in natural gas including therein its transportation among the states by pipe line is a subject national in its character and susceptible of regulation by uniform rules. The silence or inaction of Congress relative to such a subject is a conclusive indication that it intends that interstate commerce therein shall be free, and any law or act of a state or of its officers which prohibits it or substantially restrains its freedom is violative of the Constitution and void."

For supporting authority, see West v. Kansas Natural Gas Company, 221 U. S. 229, 31 S. Ct. 564, 55 L. Ed. 716, 35 L. R. A. (N. S.) 1193; Kansas Natural Gas Co. v. Haskell et al (C. C.) 172 F. 545.

Under this record, it is unnecessary to decide whether the use of the highway for the pipe line in the case at bar constitutes the taking of property under the Fifth Amendment to the Constitution of the United States.

Section 8338-d21 controls and is coupled with section 8338-d2 under consideration. So section 8338-d2 cannot be considered alone. It must be construed and considered with section 8338-d21. There is no need, then, to determine whether, if section 8338-d2 were standing alone, the permit there mentioned would be consistent with the commerce clause of the United States Constitution. Section 8338-d2 does not stand alone, but, as before said, is vitally coupled with section 8338-d21. When the two sections of the 1931 Code are thus coupled and read together, section 8338-d2 becomes unconstitutional under the commerce clause. This is true because section 8338-d21 constitutes a burden on interstate commerce. Consequently when the two sections are coupled together they constitute a burden on interstate commerce.

The legislature, in section 8338-d21, provided:

"Any pipe line company obtaining a permit as in this chapter provided or operating under one shall be conclusively presumed to have accepted the provisions thereof and all laws relating to the regulation, supervision or control thereof which are now in force or which may hereafter be enacted and to have consented to such reasonable regulation as said commission may from time to time prescribe. And any pipe line company accepting and operating under such permit or franchise shall be deemed to have thereby consented that the state of Iowa may levy and impose such general property taxes and/or taxes on gross receipts and/or taxes on net income as the general assembly may hereafter prescribe."

So, then, if a permit is accepted by the appellee under section 8338-d2 of the Code, it thereby is deemed to have consented to the legislation contemplated by section 8338-d21. When the permit is issued the consent automatically arises. They are inseparably coupled together. Although the taxes contemplated by section 8338-d21 are illegal or unconstitutional, the consent nevertheless arises. Under the consent, then, the appellee, in accepting the permit, agrees

to be bound by the tax, even though without such consent the tax could not be levied. By demanding a consent, the legislature sought to increase its powers not otherwise possessed over the appellee, regardless of the commerce clause in the federal Constitution. If the appellee had obtained the permit, the legislature intended that it would, in effect, have waived its right to make an objection to future legislation on the subjects mentioned regardless of their nature. The situation, in the event contemplated, would give rise to estoppel, the state would contend when the occasion arose. It was the intention of the state, under the situation, to have the permit give rise to a sort of estoppel against the appellee to question the validity of the laws concerned. Whether the estoppel would arise in law or equity is immaterial under the circumstances. Under the commerce clause of the Constitution, the appellee cannot be put into the position where an estoppel or waiver can be asserted against it. Although the charge of waiver and estoppel may not finally succeed, yet the appellee would be in a position where it would have to defend against the election. At all times the appelle has a right to question the validity or constitutionality of any statute. It may thus question the validity or the constitutionality of the statute even though the statute, in fact, is valid and constitutional. So, the appellee does not need to waive such right to contest, or estop itself from denying the validity or constitutionality of the statute when coming into the state of Iowa to carry on interstate commerce.

"A foreign corporation permitted to do business in a state may not be subjected to state statutes in conflict with the federal Constitution. * * * ". Liggett Company v. Baldridge, 278 U. S. 105, 49 S. Ct. 57, 59, 73 L. Ed. 204.

A state may not exact as a condition that a foreign corporation, doing business therein, agree that its constitutional rights be infringed. Hanover Fire Insurance Company v. Carr, etc., 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372, 49 A. L. R. 713; Frost & Frost Trucking Co. v. Railroad Commission of State of California, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Terral v. Burke Construction Co., 257 U. S. 529, 42 S. Ct. 188, 66 L. Ed. 352, 21 A. L. R. 186.

Section 8338-d21 contemplates that when accepting the permit, the appellee consents that the legislature of Iowa may levy a tax on its gross receipts. It was said by the Supreme Court of the United

States in New Jersey Bell Telephone Company v. State Board of Taxes and Assessments of the State of New Jersey, 280 U.S. 338, 50 S. Ct. 111, 113, 74 L. Ed. 463, reading on pages 467 and 468 of the Lawyers Edition:

"It is elementary that a state may tax property used to carry on interstate commerce. But, as the Constitution vests exclusively in the Congress power to regulate interstate and foreign commerce, a state may not tax, burden, or interfere with such commerce or tax as such gross earnings derived therefrom or impose a license fee or other burden upon the occupation or the privilege of carrying on such commerce, whatever may be the instrumentalities or means employed to that end. * * * This tax cannot be sustained if it is not upon the property, but is in fact a tax upon appellant's gross receipts from interstate and foreign commerce or a license fee to be computed thereon."

See also, Meyer v. Wells, Fargo & Co., 223 U.S. 298, 32 S. Ct. 218, 56 L. Ed. 445.

The state concedes that the appellee, in the case at bar, is engaged in interstate commerce. See Ozark Pipe Line Corporation v. Monier, 266 U.S. 555, 45 S. Ct. 184, 69 L. Ed. 439. Such right to engage in interstate commerce is not a grant of the state, but of the federal Constitution and laws of the United States. International Text-Book Company v. Pigg, 217 U.S. 91, 30 S. Ct. 481, 485, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103. Hence, the state cannot burden nor restrict interstate commerce. International Text-Book Company v. Pigg, 217 U.S. 91, 30 S. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103, supra. In the International Text-Book Company case, the state law required that the corporation, before doing business in the state, should file with the secretary of state "a detailed 'statement', showing the amount of the authorized, paidup, par, and market value of its capital stock, its assets and liabilities, a list of its stockholders, with their respective postoffice addresses, and the shares held and paid for by each, and the names and postoffice addresses of the officers, trustees, or directors and managers." A certificate was required by the state before an action could be begun in the state by the foreign corporation. This certificate was obtained by making the statement before described. When discussing the constitutionality of the state act, the Supreme Court of the United States, in the International Text-

book Company case (217 U. S. 91, 30 S. Ct. 481, 487) said, reading on pages 687 and 688 of 54 L. Ed.:

"It is sufficient to say that the requirement of the statement mentioned in section 1283 of the statute imposes a direct burden on the plaintiff's right to engage in interstate business, and therefore is in violation of its constitutional rights. It is the established doctrine of this court that a state may not, in any form or under any guise, directly burden the prosecution of interstate business. But such a burden is imposed when the corporation of another state, lawfully engaged in interstate commerce, is required, as a condition of its right to prosecute its business in Kansas, to make and file a statement setting forth certain facts which the state, confessedly, could not control by legislation. It results that the provision as to the statement mentioned in section 1283 must fall before the Constitution of the United States, and with it—according to the established rules of statutory construction—must fall that part of the same section which provides that the obtaining of the certificate of the secretary of state that such statement has been properly made shall be a condition precedent to the right of the plaintiff to maintain an action in the courts of Kansas."

Again, the Supreme Court of the United States, in Western Union Tel. Co. v. State of Kansas, etc., 216 U. S. 1, 30 S. Ct. 190, 206, 54 L. Ed. 355, declared on pages 374 and 375 of the Lawyers Edition:

"The right of the telegraph company to continue the transaction of local business in Kansas could not be made to depend upon its submission to a condition prescribed by that state, which was hostile both to the letter and spirit of the Constitution. The company was not bound, under any circumstances, to surrender its constitutional exemption from state taxation, direct or indirect, in respect of its interstate business and its property outside of the state, any more than it would have been bound to surrender any other right secured by the national Constitution."

See, also, Barron v. Burnside, 121 U. S. 186, 7 S. Ct. 931, 30 L. Ed. 915.

So in the case at bar, as was true in Western Union Telegraph Company v. Kansas, etc., 216 U. S. 1, 30 S. Ct. 190, 206, 54 L. Ed. 355, the appellee cannot be bound by state legislation under any

circumstances requiring it "to surrender its constitutional exemption from state taxation, direct or indirect, in respect of its interstate business and its property outside of the state" of Iowa. See, also, Fargo v. Stevens, 121 U. S. 230, 7 S. Ct. 857, 30 L. Ed. 888. Nor need the appellee in the case at bar consent as a condition precedent to a gross receipt tax, or to any other tax named in section 8338-d21.

Enough has been said to indicate that section 8338-d2 of the 1931 Code is coupled with section 8338-d21 thereof. A burden is cast by the combined sections upon interstate commerce. Therefore these sections, as thus coupled and associated, are in conflict with the commerce clause of the United States Constitution, and accordingly invalid.

II. Likewise, certain succeeding sections of the 1931 Code, when applied to the appellee in the method contemplated by the state, also violate said commerce clause. Section 8338-d3, above quoted, provides that the permit shall also be necessary before the appellee can engage in interstate commerce, even on the right of way obtained from the individual owners of private lands. Sections 8338-d4, 8338-d5, 8338-d6, 8338-d7, 8338-d8, and 8338-d9 relate to the applications, notices, hearings, and machinery necessary to be operated in procuring the permit provided for in section 8338-d3.

In addition to that, section 8338-d10 suggests that the railroad commission may deny appellee's permit to do business on its private right of way. And section 8338-d11 would place the entire cost of the proceedings to obtain the permit against the appellee, even though its pipe line on private property alone were affected. Manifestly, these sections violate the commerce clause of the federal Constitution. This is true because: First, the sections burden and restrict interstate commerce by requiring the permit and imposing the license fees contemplated; and, second, when the foregoing sections are associated and coupled with section 8338-d21, discussed in division I of this opinion, another burden also arises. It was said by the Supreme Court of the United States, in Dahnke-Walker Milling Company v. Bondurant, 257 U. S. 282, 42 S. Ct. 106, 109, 66 L. Ed. 239, reading on page 244 of the Lawyers Edition:

"A corporation of one state may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce [interstate commerce]; and any statute of the latter state which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause."

Under the commerce clause of the United States Constitution, a foreign corporation authorized by the state of its origin to engage in interstate commerce "may not be prevented by another state from coming into its limits for all the legitimate purposes of such commerce." Sioux Remedy Company v. Cope, 235 U. S. 197, 35 S. Ct. 57, 60, 59 L. Ed. 193. Consistent with the foregoing pronouncements of the Supreme Court of the United States, that tribunal again, in Crutcher v. Commonwealth of Kentucky, 141 U. S. 47, 11 S. Ct. 851, 854, 35 L. Ed. 649, reading on page 652 of the Lawyers Edition, stated:

"We have repeatedly decided that a state law is unconstitutional and void which requires a party to take out a license for carrying on interstate commerce, no matter how specious the pretext may be for imposing it."

Within the purview of section 8338-d3, it is necessary for the appellee to procure a permit to do an interstate business in Iowa even on its private right of way. Clearly, under the cases above cited, that section is unconstitutional because it places a burden upon, and restricts, interstate commerce contrary to the commerce clause of the federal Constitution. Sections 8338-d4, 8338-d5, 8338-d6, 8338-d7, 8338-d8, 8338-d9, 8338-d10, and 8338-d11 are likewise unconstitutional because section 8338-d10 permits the state to deny the permit, and section 8338-d11 places all the costs of the proceedings on the application for the permit on the appellee. The other sections now under consideration are auxiliary to the obtaining of the permit. If, as before said, the permit contemplated by section 8338-d3 is unconstitutional, likewise the auxiliary sections just mentioned are unconstitutional. They are unconstitutional because under their provisions interstate commerce is burdened and restricted.

As previously indicated, section 8338-d3 is associated and coupled with section 8338-d21. In division I of this opinion, it is found that section 8338-d21 is unconstitutional. It requires the appellee to agree that the state may levy and impose such "general property taxes and/or taxes on gross receipts and/or taxes on net income as the general assembly may hereafter prescribe." Because this section, as said in division I of this opinion, is unconstitutional, it must carry with it section 8338-d3 as it did section 8338-d2.

III. Section 8338-d13, the appellee also contends, is unconsti-

tutional because the same requires it to pay an annual license fee for the right to operate in the state of Iowa. Although it is true that the fee named in said section applies to the appellee's privilege and right to use or cross the public property of the state, yet, in addition thereto, such fee is exacted for the right to operate in the state of Iowa. Each purpose for the license fee named in the section is co-ordinate. The clauses, we find for the purposes of the license fee, are connected with the conjunction "and". There is nothing in the section to indicate what part of the annual license fee shall be paid for the right to cross the public property, or what part thereof shall be given for the right to operate in the state of Iowa. If none of the fee is paid for the privilege of using the public property, then all the fee apparently shall be demanded for the right to operate in the state of Iowa. No method appears by which the two purposes of the fee can be separated. Under all conditions, the fee, in whole or in part, is charged for the right to operate in the state of Iowa. Interstate commerce, in the face of the federal Constitution, cannot be burdened or restricted by the legislature of a state. Iowa, therefore, cannot require that the appellee must pay an annual license fee for the right of carrying on interstate commerce in the state of Iowa. See cases cited before, and Leloup v. Port of Mobile, 127 U. S. 640, 8 S. Ct. 1380, 32 L. Ed. 311; McCall v. California, 136 U. S. 104, 10 S. Ct. 881, 34 L. Ed. 392; City of Sault St. Marie v. International Transit Company, 234 U. S. 333, 34 S. Ct. 826, 58 L. Ed. 1337, 52 L. R. A. (N. S.) 574; Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953. See, also, Fargo v. Stevens, 121 U. S. 230, 7 S. Ct. 857, 30 L. Ed. 888 supra.

Of course, the state may enact reasonable inspection laws and other laws within its police power, which are reasonably designed to, and do, conserve the public safety and health. Accordingly a reasonable license fee may be charged an interstate carrier for the purpose of making legitimate and reasonable inspection. Moreover, the state may charge an interstate carrier for the use of its highways when the state constructed highway is used as a facility of interstate commerce. Interstate Busses Corporation v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551; Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953, supra; Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199; Sprout

v. City of South Bend, Ind., 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; Simpson v. Shepard, 230 U. S. 352, 33 S. Ct, 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Erie Railroad Company v. Board of Public Utility Commissioners, 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322; Louisiana v. Texas, 176 U. S. 1, 20 S. Ct. 251, 44 L. Ed. 347; Minnesota v. Barber, 136 U. S. 313, 10 S. Ct. 862, 34 L. Ed. 455; Morgan's Louisiana & Texas Railway & Steamship Co. v. Board of Health of the State of Louisiana, 118 U. S. 455, 6 S. Ct. 1114, 30 L. Ed. 237; Savage v. Jones, 225 U. S. 501, 32 S. Ct. 715, 56 L. Ed. 1182; Iowa Motor Vehicle Association v. Board of Railroad Commissioners of State of Iowa et al., 207 Iowa, 461, 221 N. W. 364, 75 A. L. R. 1; Id., 280 U. S. 530, 50 S. Ct. 151, 74 L. Ed. 595.

Regardless of this principle of police power, however, the state is never justified in going beyond the scope of such limited regulation and in the face of the commerce clause of the federal Constitution, placing a burden upon and restricting interstate commerce. See cases first above cited under this proposition. While the Iowa legislature may, under proper circumstances, have required the appellee to pay a license fee for the purpose of reasonable inspection and regulation under its police power, yet section 8338-d13 goes farther than that. In the case at bar, the state, through section 8338-d13, sought to require an annual license fee as a condition precedent to the right of the appellee to operate in the state of Iowa. Clearly, under the authorities cited, this section of the Iowa statute is unconstitutional and void because it conflicts with the commerce clause of the federal Constitution.

IV. Although it is argued by the appellee that the license fee provided by the Iowa statutes amounts to double taxation, and therefore is void, the proposition need not be considered because the license fee has been held unconstitutional on other grounds.

Wherefore, the judgment and decree of the district court must be, and hereby is, affirmed.—Affirmed.

All Justices concur.