MID-AMERICA PIPELINE COMPANY, plaintiff-appellant, v. IOWA STATE COMMERCE COMMISSION et al., defendants-appellees.

No. 51197.

(Reported in 125 N.W.2d 801)

1306

Herrick, Langdon, Sandblom & Belin, of Des Moines, and Eugene G. Bell, of Tulsa, Oklahoma, for plaintiff-appellant.

Gibson, Stewart & Garrett; Duncan, Jones, Hughes, Riley & Davis, all of Des Moines, and Ralph P. Blodgett, of Omaha, Nebraska, for defendant-appellee, Northern Gas Products Company.

John J. Goen and Leo Steffen, both of Des Moines, for defendants-appellees, Iowa State Commerce Commission and members.

THOMPSON, J.—This is the second time the controversy between the plaintiff, Mid-America Pipeline Company, hereinafter known as Mid-America, and the defendant Northern Gas Products Company, hereinafter known as Northern, has been before us. See Mid-America Pipeline Co. v. Iowa State Commerce Commission and Northern Gas Products Co., 253 Iowa 1143, 114 N.W.2d 622. In each case the Iowa State Commerce Commission, hereinafter known as the commission, has been involved somewhat in the role of the innocent bystander who finds himself embroiled in a battle in which he has no personal interest.

The first case involved only the question whether the commission might issue a permit to Northern for the construction of a pipeline across Iowa from its western border to Des Moines which carried with it the right to use the power of eminent domain. It came to us on the pleadings, and we held that since it appeared Northern proposed to carry only its own products and was engaged in a purely private business with no public use involved, it might not be granted that power.

Thereafter Northern surrendered the permit which had been issued to it by the commission, and applied for a permit to construct its line without the right of eminent domain. It had purchased all necessary rights-of-way from private owners, and needed only a permit to cross public highways, grounds and streams. After a hearing, the commission granted the permit, and this action was brought by Mid-America.

I. The two major questions involved in this appeal are these: 1, has the commission statutory authority to issue a permit such as was granted to Northern here; and 2, if so, is such authority constitutional? One other question is raised by the plaintiff which will be discussed in turn.

II. We find little difficulty in holding that chapter 490 of the Code of 1962 gives the commission power to issue the permit. Section 490.1 provides: "It is hereby declared to be the purpose and policy of the legislature in enacting this law to confer upon the commerce commission the power and authority to supervise the transportation or transmission of gas, gasoline, oils or motor fuels and/or inflammable fluid within or through this state by pipeline, whether specifically mentioned herein or not, and the power and authority to supervise the underground storage of gas, so as to protect the safety and welfare of the public in their use of any public and/or private highways, grounds, waters and streams of any kind in this state." In section 490.2 pipelines and pipeline companies are defined, and here again we find the words "within or through this state". Section 490.3 prohibits the construction, operation or maintenance of any pipeline under, over or along any public or private highways, grounds, waters or streams except in ac-

cordance with the provisions of chapter 490. Sections 490.5 and 490.6 specify the required application and its contents.

Section 490.12 is important to our consideration, and we quote it: "It may grant such permit in whole or in part upon such terms, conditions and restrictions as to safety requirements and as to location and route as may be determined by it to be just and proper. Provided, however, that before any permit shall be granted to any pipeline company proposing to engage in intrastate commerce, the commission shall, after a public hearing as provided in this chapter, determine whether the services proposed to be rendered will promote the public convenience and necessity, and an affirmative finding to such effect shall be a condition precedent to the granting of such permit."

Parenthetically, it is noted that all safety requirements of the commission have been met; and all subsidiary permits from the state highway commission, boards of supervisors etc. have been secured. No controversy exists concerning these matters.

Reverting to chapter 490 we find that sections 490.19, 490.20 and following sections through 490.24 deal with permits and by implication at least uphold the right of the commission to issue them. We come then to section 490.25, which is relied upon by the plaintiff as supporting its position. The first paragraph provides: "Any pipeline company having secured a permit for pipelines as in this chapter provided shall thereupon be vested with the right of eminent domain to such extent as may be necessary and as prescribed and approved by said state commerce commission, not exceeding seventy-five feet in width for right of way and not exceeding one acre in any one location in addition to right of way for the location of pumps, pressure apparatus or other stations or equipment necessary to the proper operation of its said pipeline or lines. * * *."

It will be noted that this language says that when a permit for a pipeline has been secured the company procuring it "shall thereupon be vested with the right of eminent domain to such extent as may be necessary and as prescribed and approved by said state commerce commission * * *." So the plaintiff argues that since Northern is admittedly carrying only its own products and is not serving any public use, it may not have

a permit because such permit, under the statute, carries with it the right of eminent domain, which Northern may not have.

We do not so consider it. The statute gives the right only to such extent as may be necessary, and as may be prescribed and approved by the commission. No right of eminent domain is necessary here, nor has the commission prescribed or approved it. Again, if the construction put on the statute by the plaintiff were adopted, it would result only in a holding that that part of the statute giving the right of eminent domain automatically upon the issuance of a permit, under the circumstances here would be unconstitutional and void. See Mid-America Pipeline Co. v. Iowa State Commerce Commission and Northern Gas Products Co., supra. But it would not affect the other statutes in the chapter which plainly give the commission the right to issue permits.

■ Again, the plaintiff urges that if it be held that a permit may be issued for interstate transportation, such as Northern asks here, without a showing of public use or necessity, unconstitutional discrimination results because of section 490.12, supra, which requires that a showing of public convenience and necessity must be made before a permit may be granted to a pipeline company proposing to engage in intrastate commerce. This is one of those pipelines, or bridges, which we prefer to cross when we reach it. The plaintiff is not engaged in intrastate, but in interstate, commerce. It is not one of those injured by the discrimination, if such exists, and so may not raise the question. Browneller v. Natural Gas Pipeline Co., 233 Iowa 686, 692, 8 N.W.2d 474, 477. Nor would a holding that section 490.12 is discriminatory and so void be of any value to the plaintiff here.

■ Indeed, the limitation of the necessity for a showing of public use and convenience as a prerequisite for granting a permit to intrastate pipelines is a strong indication that such a permit may be issued to interstate lines without such a showing. The doctrine of *expressio unius est exclusio alterius* applies here. In fact, it is a fair inference that the state did not require proof of public use, necessity or convenience as applied to interstate lines, among other possible reasons because it could not. In

State ex rel. Board of Railroad Commissioners v. Martin, 210 Iowa 207, 213, 230 N.W. 540, 544, we said: "Because of the commerce clause [of the United States Constitution], the state may not condition the right to engage in interstate commerce upon * * * whether or not public convenience and necessity would be promoted or retarded thereby." We note the plaintiff makes some contention Northern will not, in the construction and operation of the proposed line, be engaged in interstate commerce. We shall deal with this argument later.

The declared purpose of the Act, as stated in section 490.1, the definition of pipelines contained in section 490.2, and other sections of chapter 490 show clearly that the commission is given the power to issue permits to interstate pipeline companies without regard to public convenience or necessity. In fact, it is required to do so, subject only to safety regulations and proper permits to cross highways and railroad rights-of-way.

III. This leads to a study of the plaintiff's contention that if the statutes do give the commission the power to issue permits to those engaged in interstate transportation of such products as are carried by pipelines, to cross the public highways, grounds and streams, they are unconstitutional and void. The record shows that Northern proposes to run its line from a location in Kansas across part of Nebraska and from the western border of Iowa to Des Moines. There it will make connections with pipelines of the Great Lakes Pipeline Company, an interstate common carrier with terminals in Iowa, Illinois and Minnesota. From these terminals gas is sold to customers in those states. The gas will come in a continuous flow from Bushton, Kansas, to points in Iowa and other states.

Mid-America contends that Northern proposes to engage in interstate transportation rather than interstate commerce, and so, as we understand it, is not protected by the commerce clause of the Federal Constitution. We are unable to agree. Reliance is placed by the plaintiff upon certain cases, none of which supports its position, as we read them. United States v. Champlin Refining Co., 341 U. S. 290, 71 S. Ct. 715, 95 L. Ed. 949, dealt with the question of whether the Interstate Commerce Commission was acting within the purview of the Interstate Commerce

Act. It was held the Act did not apply to a carrier transporting only its own product with no connection with other carriers and an attempt of the Interstate Commerce Commission to apply it was invalid. The case turns only on the interpretation of the Act. But in Champlin Refining Co. v. United States, 329 U. S. 29, 35, 67 S. Ct. 1, 3, 4, 91 L. Ed. 22, 26, is this language: "The power of Congress to regulate interstate commerce is not dependent on the technical common carrier status but is quite as extensive over a private carrier."

The Pipe Line Cases, United States v. Ohio Oil Co., 234 U. S. 548, 558, 34 S. Ct. 956, 965, 58 L. Ed. 1459, 1469, again deal only with the application of a specific Act of Congress regulating transportation of commodities by pipelines, " 'who shall be considered and held to be common carriers within the meaning and purpose of this Act.' " So far as material here, the decision holds no more than that a company which had a refinery in Kansas and oil wells in Oklahoma, from which it piped the crude oil to its refinery for processing, was not within the meaning of the Act.

Pennsylvania Railway Co. v. Public Utilities Commission, 298 U. S. 170, 56 S. Ct. 687, 80 L. Ed. 1130, also cited by the plaintiff, again concerns only the question whether the transportation of a commodity, in this instance coal, from one state to another is within the scope of enacted federal regulation. The issue is thus stated by Justice Cardozo: "The question for us here is not whether the movement of the coal is to be classified as commerce or even as commerce between states. The question is whether it is that particular form of interstate commerce which Congress has subjected to regulation in respect of rates by a federal commission." Loc. cit. 298 U. S. 174, 56 S. Ct. 688, 689, 80 L. Ed. 1132.

None of the authorities cited by the plaintiff holds that the interstate transportation of a commodity by pipeline under the circumstances shown here is not interstate commerce. The product comes from Kansas, across Nebraska, and into Iowa. At Des Moines the lines connect with other lines, by which liquid hydrocarbons are carried into Minnesota, Illinois, and farther into Iowa, for purposes of sale. This is interstate commerce.

IV. It is contended that the action of the commission in granting the permit constitutes an unlawful taking of property without just compensation, and that the statutes which permit it, if they do, as we have held, are therefore unconstitutional and void and the acts of the commission must also be held to be void. We may concede, for the purpose of this discussion, that public property is in some respects and under some conditions protected by the constitutional provisions prohibiting the taking of private property without just compensation. But we do not find the rule, if it is a rule, applicable here. Public property is not appropriated by the pipeline. The commission is required to find that the proposed installations are safe; special permits from the state highway commission and boards of supervisors are necessary in order to permit underground crossing of highways. The public property is not taken; no more is granted than a means of crossing them, which does not permanently disturb or interfere with the public use. Indeed, an absolute denial of the right to cross the public highways, grounds and streams would be a prohibition of interstate commerce which is beyond the power of the state.

In State ex rel. Board of Railroad Commissioners v. Stanolind Pipe Line Co., 216 Iowa 436, 442, 249 N.W. 366, 369, we quoted with approval from Haskell v. Cowham, C. C. A., 8th Cir., 187 F. 403, 408: "No state may by means of its police power, * * * over highways or by means of any of its other powers, erect and maintain impassable barriers against interstate commerce along its borders or through its body in the face of the grant to the nation of the power to regulate that commerce; for all the powers of the state are subordinate to this power of the nation and to its will that such commerce shall be free." In the same case it is said: "Interstate commerce in natural gas including therein its transportation among the states by pipeline is a subject national in its character and susceptible of regulation by uniform rules. The silence or inaction of Congress relative to such a subject is a conclusive indication that it intends that interstate commerce therein shall be free, and any law or act of a state or of its officers which prohibits it or sub-

stantially restrains its freedom is violative of the Constitution and void." Loc. cit. 187 F. 408.

In the Haskell case, supra, the State of Oklahoma was attempting to prohibit the taking of natural gas out of the state by pipeline, through refusal to permit crossing of the highways in that state. Our own case of State ex rel. Board v. Stanolind Pipe Line Co., supra, has an interesting and informative analysis of the right of the states to restrict interstate commerce through pipelines. Among other things, it is there said:

"Of course, the state may enact reasonable inspection laws and other laws within its police power, which are reasonably designed to, and do, conserve the public safety and health. Accordingly a reasonable license fee may be charged an interstate carrier for the purpose of making legitimate and reasonable inspection. Moreover, the state may charge an interstate carrier for the use of its highways when the state constructed highway is used as a facility of interstate commerce. * * *

"Regardless of this principle of police power, however, the state is never justified in going beyond the scope of such limited regulation and in the face of the commerce clause of the federal Constitution, placing a burden upon and restricting interstate commerce." Loc. cit, 216 Iowa 449, 450, 249 N.W. 373.

The state commonly permits the crossing of its highways by electric power lines; in fact, permits them to run along the roads, under proper permits. The proposed pipeline here will not use the highways, streams and public grounds it crosses as do vehicles used in interstate commerce; it does not occupy them. So far as it is concerned, they are merely obstructions which it must cross in its progress from one state to another and through the state. We are clear that the state has no right to prohibit this form of interstate commerce by refusing to permit such crossings, governed by proper safety regulations and the general provisions of chapter 490. The permit granted is an assurance that the commission has found compliance with the chapter. We hold the commission has statutory authority to issue it, and no constitutional provision has been violated.

█ V. The plaintiff thinks certain right-of-way easements

secured by Northern after it had secured the first permit which purported to give it the right of eminent domain and before our decision in Mid-America Pipeline Co. v. Iowa State Commerce Commission, supra, had struck it down, are now void. These are easements secured from owners of private property along the proposed route of Northern's line, permitting construction and maintenance through their lands. Some of these landowners appeared and testified they would not have made the grants if they had not thought, in fact been advised, perhaps threatened, that the easements could be secured by Northern by condemnation.

We have examined the authorities thought by the plaintiff to support its position, but we find them not in point, and will not lengthen this opinion by analyzing them. They do not reach or support the contention made. Northern produced evidence that it has the necessary easements from all owners, and consequently did not need the right of eminent domain. How these easements were secured was not within the jurisdiction of the commission to adjudicate. If these landowners felt that they were induced to part with their easements through fraud or misrepresentation, they have their remedy in the courts. The commission does not provide a forum for such controversies, and its permit may not be attacked because of such claims. And the remedy, if there is one, is with the landowners, not with the plaintiff, in any event.

We find the decree and judgment of the trial court in all respects correct.—Affirmed.

All JUSTICES concur.