IOWA MOTOR VEHICLE ASSOCIATION et al., Appellants, v. BOARD OF RAILROAD COMMISSIONERS, Appellees; L. C. PANTAGES et al., Appellants.

462

SEPTEMBER 28, 1928.

REHEARING DENIED JANUARY 23, 1929.

*Bradshaw, Schenk & Fowler* and *Senneff, Bliss & Witwer*, for plaintiffs, appellants.

*John Fletcher*, Attorney-general, *Maxwell A. O'Brien*, Assistant Attorney-general, *Dwight N. Lewis*, Commerce Counsel, and *Stephen Robinson*, for appellees.

*A. D. Pugh*, for interveners, appellants.

DE GRAFF, J.—I. Two co-related questions are involved on this appeal: (1) Is Chapter 252-A2 (Section 5105-a40 *et seq.*), Code of 1927, in conflict with Article III, Section 30, of the Constitution of Iowa, in that it is a special law for the assessment and collection of taxes for road purposes? (2) Is Chapter 252-A2, Code of 1927, violative of the provisions of the Fourteenth Amendment to the Constitution of the United States, in that it denies to the complainants the equal protection of the law?

In the approach to the discussion of the questions heretofore indicated, it may be well to note first the provisions of the challenged statutes. Section 5105-a40 defines certain terms, and, *inter alia*, contains the following:

"1. The term 'motor vehicle' shall mean any automobile, automobile truck, motor bus, or other self-propelled vehicle, not operated upon fixed rails or track, used for the public transportation of freight or passengers for compensation between fixed termini, or over a regular route, even though there may be occasional, periodic or irregular departures from such termini or route; except those busses owned by school corporations and used exclusively in conveying school children to and from schools.

"2. The term 'motor carrier' shall mean any person operating any motor vehicle upon any highway in this state."

It is provided in Section 5105-a41:

"In addition to the regular license fees or taxes imposed upon motor vehicles there shall be assessed against and collected from every motor carrier the following tax for the maintenance and repair of the highways: For motor vehicles having pneumatic tires, one-fourth cent per ton-mile of travel. For motor vehicles having hard rubber or solid tires, one-half cent per ton-mile travel."

Section 5105-a42 provides:

"The ton-miles of freight travel shall be computed as follows: The maximum capacity of each motor vehicle, including trailers, shall be added to the weight of the vehicle; this sum shall be multiplied by the number of miles the vehicle is operated, and the amount thus obtained divided by two thousand."

Section 5105-a43 provides:

"The ton-miles of passenger travel shall be computed as follows: The maximum seating capacity of each passenger-carrying motor vehicle, including trailers, shall be estimated at one hundred fifty pounds per passenger seat; to this sum shall be added the weight of the vehicle, the total shall then be multiplied by the number of miles operated, and the amount thus obtained divided by two thousand."

In subsequent sections it is provided that motor carriers shall keep daily records, upon forms prescribed by the commission, and make monthly reports on or before the 10th of the month following.

Section 5105-a48 prescribes that:

"On or before the last day of each month, the commission shall notify all motor carriers of the amount of the tax due from them for the preceding month, which shall be computed by multiplying the total number of ton-miles operated, by the appropriate rate of taxation as herein prescribed, and shall be paid to the commission on or before the 15th day of the following month."

It is further provided that, if the payment is not made upon the said date, a penalty shall be added, and that taxes and penalty shall be a first lien upon all the property of the motor carrier, and, in the event that the "payment is not made on or before 60 days from the date the tax is payable, the property of the carrier, or so much thereof as may be necessary, may be sold to satisfy the said taxes and penalty, interest, and costs of sale." It is made the duty of the board of railroad commissioners to collect all taxes and penalties provided in this chapter, and to remit to the treasurer of the state of Iowa all moneys so collected.

Section 5105-a54 defines the distribution of the proceeds as follows:

"1. For the administration and enforcement of the provisions of this chapter and the regulation of motor carriers one fifth, or so much thereof as may be necessary, shall be paid to the commission by warrant drawn from time to time by the auditor of state upon the treasurer of state. 2. The balance shall be allocated each month by the commission to the various counties in the proportion that the number of ton-miles of travel in the respective county bears to the total number of ton-miles of travel within the state."

It is the further duty of the commission to certify the amount due each county to the auditor of state, who shall draw warrants upon the treasurer of state, to be transmitted to the respective county treasurers. Such funds shall be used by each county board of supervisors for the maintenance and repairs of highways over which motor carriers operate.

In connection with the foregoing provisions as contained in Chapter 252-A2, Code of 1927, there must be taken into consideration Chapter 252-A1, with the caption "Regulation of Motor Vehicle Carriers." The legislature (forty-first general assembly) enacted these two chapters on the same date, as a part of the same system and comprehensive plan, and with the same class of carriers in contemplation.

Chapter 252-A1, Code of 1927, defines the special and general powers of the railroad commission of this state. The chapter also makes it unlawful for any motor carrier "to operate or furnish public service within this state without first having obtained from the commission a certificate declaring that public convenience and necessity require such operation." Section 5105-a6.

It is the general rule, as to the construction of statutes adopted at the same session of the legislature when they relate to the same subject-matter, that they shall be construed together. The rule that statutes *in pari materia* shall be construed together applies with peculiar force to statutes passed at the same session of the legislature. It is presumed that such acts are imbued with the same spirit, and actuated with the same policy, and they are to be construed together, as if parts of the same act. 36 Cyc. 1151.

The two chapters in question constitute a plan promulgated by the state legislature at the same time, for the purpose of taxing and regulating motor carriers using the highways of this state, and only those motor carriers which qualify under the provisions of Chapter 5, Laws of the Forty-first General Assembly (Chapter 252-A1, Code of 1927), are required to pay the license fee or tax imposed under the provisions of Chapter 252-A2.

It may be observed that the act in question recognizes and expressly declares the creation and levy of a tax for the maintenance and upkeep of the public highways. See *State v. Manhattan Oil Co.*, 199 Iowa 1213. The legislative intent is primarily the creation of a privilege tax for road use under the classification as defined and limited by the statute. The authorities generally affirm that the power to tax, in a strict and proper sense, for the purpose of creating revenue, is not included within the police

power of the state. *City of Terre Haute v. Kersey*, 159 Ind. 300 (64 N. E. 469). See, also, *City of Ottumwa v. Zekind*, 95 Iowa 622; *City of Burlington v. Putnam Ins. Co.*, 31 Iowa 102; *Star Transportation Co. v. City of Mason City*, 195 Iowa 930; 17 Ruling Case Law 532; 26 Ruling Case Law 17; 37 Cyc. 711. True, part of the fund so levied and collected is devoted to the administration and enforcement of the provisions of the chapter and the regulation of motor carriers.

Sufficient to state that the statute under consideration is a conservation law, which provides for the assessment and collection of a fund for road purposes. It is based upon the physical employment of the highway, and contemplates the "wear and tear" of the highway and the repair and maintenance thereof. It may be conceded that there must be some other reason for the instant classification than the use of the vehicle, unless the use itself affords substantial grounds for a distinction. *Waters-Pierce Oil Co. v. Hot Springs*, 85 Ark. 509 (109 S. W. 293, 16 L. R. A. [N. S.] 1035). We do not feel, however, that the questions of constitutional law involved herein can be determined by an attempted distinction between the so-called police power of the state and the governmental power of the state to enact revenue measures. See *State v. Caplan*, 100 Vt. 140 (135 Atl. 705).

The Constitution of the United States is the supreme law, anything in the Constitutions or statutes of the states to the contrary notwithstanding, and a statute of a state, even when avowedly enacted in the exercise of its police powers, must yield to that law. As said in *Connolly v. Union Sewer Pipe Co.*, 184 U. S. 540 (46 L. Ed. 679):

"No right granted or secured by the Constitution of the United States can be impaired or destroyed by a state enactment, whatever may be the source from which the power to pass such enactment may have been derived."

We may first inquire whether the act in question contravenes the provision of the Constitution of Iowa, to wit:

"The general assembly shall not pass local or special laws in the following cases: For the assessment and collection of taxes for state, county, or road purposes; * * * In all the cases above

enumerated, * * * all laws shall be general, and of uniform operation throughout the state; * * * '' Article III, Section 30.

Clearly, the statute may not be designated as "local." A public or general law is one that operates uniformly, as distinguished from a special or local act, which does not so operate, but relates to the particular locality or a part of a class. 36 Cyc. 987. Nor do we feel that the statute in question may be denominated "special," as distinguished from a general act. The criterion is well stated in *Budd v. Hancock*, 66 N. J. Law 133 (48 Atl. 1023), wherein it is said:

"A law is special, in a constitutional sense, when, by force of an inherent limitation, it arbitrarily separates some persons, places, or things from others, upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained, the law is general. Within this distinction between a special and a general law, the question in every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply. If the only limitation contained in a law is a legitimate classification of its objects, it is a general law. Hence, if the object of a law have characteristics so distinct as reasonably to form, for the purpose legislated upon, a class by itself, the law is general, notwithstanding it operates upon a single object only; for a law is not general because it operates upon every person in the state, but because every person that can be brought within its predicament becomes subject to its operation."

See, also, *Town of McGregor v. Baylies*, 19 Iowa 43.

It is said in *State ex rel. West v. City of Des Moines*, 96 Iowa 521:

"It is not necessary to an observance of this provision [Constitution] that the law should operate uniformly on all the people of the state, nor, when the legislation pertains to cities, is it important that it should operate uniformly on all cities throughout the state. But if the law is made to operate upon a particular condition as to persons or property, and is operative when-

ever and wherever the same conditions exist, affixing the same consequences, then it is a general law in its operation, even though it only operates on one of the conditions or classes specified.''

On this phase of the case, therefore, we hold that the statute is not violative of the Constitution of Iowa.

II. Is the statute violative of the provisions of the Fourteenth Amendment to the Federal Constitution in that it denies the equal protection of the law? Is it unreasonable and discriminatory in character? The state is sovereign as to the supervision and regulation of its roads and highways. We do not mean that it has uncontrollable discretion, but the legislature may find definitions and make classification, and unless the judicial branch of the government finds a basis for the unconstitutionality of the act, the latter will not encroach upon the functions of the law-making power.

It is the prerogative of the legislature to classify property for the purpose of taxation. It has done so in the instant matter. It has placed motor vehicles engaged as common carriers in the transportation of passengers and freight over regular routes, on scheduled trips, and between fixed termini, in one class, and all other commercial and miscellaneous motor vehicles in another class. This results in a legislative finding that there was sufficient difference in the use made of the public highways to justify the difference in classification. Shall this court say that there was no basis of fact for the finding? If there is any reasonable ground for the classification, and the law operates equally upon all within the same class, there is no violation of the constitutional inhibition, either state or Federal, relating to class legislation, equal protection of the laws, the abridgment of privileges or immunities of citizens, or depriving persons of property or liberty without due process of law. It is presumed that the legislature acted reasonably in making the classification, and the burden is on the challenger to prove that the classification does not rest upon a reasonable basis, but is essentially arbitrary and palpably discriminating.

The state may reasonably regulate the manner and extent of the use of its public highways by common carriers, and the quantum of the privilege tax for the use of the highways does not necessarily have to be limited to the actual cost of such regu-

lation, but may also, as in the instant case, include compensation for the use of the highway, and provision for anticipated repairs and improvements thereon. The statute in question is not class legislation because it applies only to common carriers of fixed routes. We may take judicial notice that commercial motor vehicle transportation and highway maintenance expense resulting therefrom are rapidly increasing, and that traffic on the main highways is becoming more and more congested. It is not an unreasonable classification for the legislature to make a distinction between those common carriers whose use of the highway is regular, and hence more frequent, and whose operation is attended with great danger to life and property and great damage to the highways, and those carriers whose use of the highways is only occasional and spasmodic. Such a distinction does not constitute an arbitrary discrimination, provided that the state of facts is sufficient to sustain the classification. See *Liberty Highway Co. v. Michigan Public Util. Com.*, 294 Fed. 703, with cases cited.

The appellants herein do operate over regular routes or between fixed termini, whereas the other class of motor carriers, such as taxicabs, trucks hauling farm products to market, oil trucks, moving vans, ambulances, funeral cars, and miscellaneous carriers in general, use the highways "without any conscious or organized effort to create or assemble or concentrate traffic for hire upon particular localities or sections of the highway." *Iowa Motor Vehicle Assn. v. Board of Railroad Com.*, 202 Iowa 85. See, also, *State ex rel. Northern Transp. Co. v. Railroad Com.* (Wis.), 220 N. W. 390.

The appellants herein constitute a class of motor carriers which operate from terminal stations that are maintained and advertised as such by the carriers. The right of appellants to make the highways of this state their place of business or a part of their capital investment is distinct and different from the right of a citizen to travel thereon or to transport his property. Appellants operate from regularly established depots and stations in various towns along their route, on scheduled trips, year in and year out. They pick up and discharge passengers along the route, and by reason of their manner of operation, they are granted a franchise or certificate of public convenience and necessity by the board of railroad commissioners of Iowa.

One of the appellants herein, the Red Ball Transportation Company, and in fact the only party offering evidence upon the trial, operated, in the year 1926, a total of 812,370 miles over routes between fixed termini for which it holds a certificate of convenience and necessity. This fact itself illustrates the enormous concentration of traffic by one carrier. We cannot escape the conclusion that, under the record, the appellants belong to and comprise a class entirely separate, distinct, and different from the other motor vehicles operating over the highways of this state. The legislature is presumed to have full information upon such matters, and in passing upon same, the courts cannot say that the legislature did not find sufficient difference in the use of the highways by motor vehicles to warrant the classification under complaint. See *McReavy v. Holm*, 166 Minn. 22 (206 N. W. 942).

The courts will assume that the legislative arm of the government considered the interest of the whole people in enacting a statute providing for a classification, and it is also a well settled principle that a court will not declare a law unconstitutional, in whole or in part, unless it is clearly, plainly, and palpably of that character. *McGuire v. Chicago, B. & Q. R. Co.*, 131 Iowa 340; *Baldwin v. State*, 194 Ind. 303 (141 N. E. 343).

In passing, it may be said that all but five states in the union have statutes analogous to the one involved in the case at bar. We do not find that the Supreme Court of any state or of the United States has declared statutes of this character unconstitutional, although the instant or similar objections have been urged in the appellate courts. A few decisions may be cited: *Holmes v. Railroad Com.*, 197 Cal. 627 (242 Pac. 486); *Smallwood v. Jeter*, 42 Ida. 169 (244 Pac. 149); *Reo Bus Lines Co. v. Southern Bus Line Co.*, 209 Ky. 40 (272 S. W. 18); *Maine Motor Coaches v. Public Utilities Com.*, 125 Me. 63 (130 Atl. 866); *Restivo v. Public Service Com.*, 149 Md. 30 (129 Atl. 884); *Barrows v. Farnum's Stage Lines*, 254 Mass. 240 (150 N. E. 206); *Packard v. Banton*, 264 U. S. 140 (68 L. Ed. 596); *Raymond v. Holm*, 165 Minn. 215 (206 N. W. 166); *State v. LeFebvre*, 174 Minn. 248 (219 N. W. 167); *Ex parte Anderson*, 49 Nev. 208 (242 Pac. 587); *Ex parte Tindall*, 102 Okla. 192 (229 Pac. 125); *State ex rel. Evans v. Kozer*, 116 Ore. 581 (242 Pac. 621); *In re James*, 99 Vt. 265 (132 Atl. 40).

We conclude, therefore, that the law in question is not discriminatory. Equal protection is not denied if all persons subject to the statute are treated alike under like circumstances. *State v. McGuire,* 183 Iowa 927. In the instant case, the law is based upon the actual manner of operation, and there can be no doubt that, where a state, at its own expense, furnishes special facilities for the use of those engaged in commerce, it may exact compensation therefor. It has the right to say, if it pleases, that no person or corporation shall use its public highways as a transportation line for hire. The right of a citizen to travel upon the highway and transport his property thereon in the ordinary course of living and business is radically different from that of one who makes a certain portion of the highway his place of business, and uses it for private gain in the transportation of freight or passengers, as under the terms of the statute in question.

From whatever angle the cause may be viewed, we discover no basis upon which to predicate the constitutional objections urged. The decree entered by the trial court is—*Affirmed.*

All the justices concur.