(No. 32357.—

WILLIAM HORNSTEIN, doing business as "Club Reo," Appellee, *vs.* THE ILLINOIS LIQUOR CONTROL COMMISSION *et al.,* Appellants.

*Opinion filed May 22, 1952.*

IVAN A. ELLIOTT, Attorney General, and GEORGE P. COUTRAKON, State's Attorney, both of Springfield, ROBERT B. OXTOBY, and ROSCOE BONJEAN, óf counsel,) for appellant Illinois Liquor Control Commission.

LONDRIGAN & LONDRIGAN, and ROBERT WEINER, both of Springfield, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The liquor control commissioner of Sangamon County revoked the local liquor license of William Hornstein to sell intoxicating liquor at retail in the premises commonly known as "Club Reo," in Springfield. Hornstein appealed to the Illinois Liquor Control Commission, which, after a hearing, sustained the action of the local commissioner. An action to review these administrative determinations was filed in the circuit court of Sangamon County and that court reversed the administrative action. Upon appeal to the Appellate Court for the Third District, the case was transferred to this court, constitutional questions being involved. Ill. Rev. Stat. 1951, chap. 110, par. 199.

The first issue for determination requires a construction of the Liquor Control Act. The revocation in this case was accomplished by the following letter which the local liquor control commissioner wrote to Hornstein: "Upon the advice and council [sic] of the State's Attorney of Sangamon County, Illinois, your county license No. 81 for the sale at retail of alcoholic liquors is hereby revoked." It was contended in the circuit court, and that court held, that the applicable statute should be construed to require notice and a hearing before the local commissioner, as well as written findings by that officer, as a condition to the effective revocation of a local liquor license. The appellants contend that no hearing is required as a prerequisite to the revocation of a local liquor license by the local commissioner, and that such a license may be revoked by notice to the licensee of the action of the commissioner.

This issue requires analysis of the pertinent provisions of the Liquor Control Act. (Ill. Rev. Stat. 1951, chap. 43, pars, 94-195.) Section 3 of article IV of the act, enumer-

ating the powers of a local liquor license commissioner, authorizes him "to grant and revoke for cause all local licenses issued to persons for premises within his jurisdiction." Section 4 gives him the right to examine, under oath, any applicant for a license or any licensee upon whom notice of revocation has been served, and to examine or cause to be examined, the books and records of any such applicant or licensee; to hear testimony and take proof for his information in the performance of his duties, and for such purpose to issue *subpoenas* which shall be effective in any part of the State.

Article VII also relates to the revocation of licenses. Section 5 of that article provides that the local commission may revoke a license if it determines that the licensee has violated any of the provisions of the act or of any valid ordinance or resolution or any rule or regulation of the local commission. Section 7 authorizes the filing of a complaint seeking revocation of a license with the local commission by any five residents. And that section specifically requires a hearing by the local commission upon such a complaint, and provides for service of notice upon the licensee of the time and place of the hearing and of the particular charge in the complaint. Section 8 provides that "any order or action" of a local commission granting or refusing a license, revoking or refusing to revoke a license, or refusing to grant a hearing upon a complaint to revoke a license, may be appealed to the State commission. That section requires that the State commission give notice of and conduct a public hearing at which the propriety of the action or order of the local commission is to be tried *de novo*, that all evidence offered at the hearing be reduced to writing, and that the commission's determination be expressed in a written order.

What stands out from an examination of the statute is that there is no express requirement of a hearing by the local commissioner as a condition precedent to an order

revoking a local liquor license. In the absence of constitutional command, a matter which will be dealt with subsequently, if a hearing is required, the requirement must be established by inference. In an effort to establish such a requirement, Hornstein points out that licenses are to be revoked "for cause" and that the commissioner is authorized to examine a licensee upon whom a notice of revocation has been served, and to issue *subpoenas*. But the requirement that the license be revoked "for cause" serves its full purpose by conditioning the action of the local officer and by providing a guide to the State commission in determining upon appeal whether revocation of the license was warranted. And authority to examine under oath and to issue *subpoenas* in an effort to determine whether or not a license should be issued or revoked is not equivalent to a requirement that a hearing be had before a license can be issued or revoked. When the General Assembly intended to require a hearing, as in the case of a complaint to revoke filed by five residents and in the case of an appeal to the State commission, the requirement was explicitly stated and not left to be built up by a process of tenuous inferences.

The nature of the business being regulated, the necessity for summary action to protect the public welfare, and the absolute right to appeal to the State commission which the statute affords, combine to establish that the General Assembly deliberately omitted any requirement that there be a hearing when the local commissioner revokes of his own volition. That the propriety of the local commissioner's "order or action" is to be determined by the State commission upon a trial *de novo* does not by inference require a hearing before the local officer. Review of local action upon applications for licenses and upon revocations is provided in the same language. It could hardly be suggested that a formal hearing is a prerequisite to the issuance of a license. And the reference to the "action" as well as the

"order" of the local officer in revoking a license makes it clear that the legislature contemplated summary revocation. We conclude, therefore, that the statute does not require notice or hearing before the local commissioner can revoke a license.

A similar conclusion was reached in *Paoli* v. *Mason,* 325 Ill. App. 197. There, a tavern keeper brought an action against a local liquor control commissioner to recover damages claimed to have been suffered as a result of the improper revocation of a liquor license. The local commissioner saw what he believed to be a violation of the law in the sale of intoxicating liquor to a minor, and summarily removed the license from the wall of the tavern, thereby effecting a revocation of the license. The Appellate Court said: "Under the circumstances shown by the record, defendant did not commit a trespass in taking the framed license certificate. Defendant had the right to revoke the license. The method he adopted was to enter the premises and take down the license."

It is next contended that unless notice and a hearing are required to precede the revocation of a local license, the statute violates the due process clauses of the Federal and State constitutions. An understanding of the nature of a license to sell liquor is necessary to a consideration of this contention. The statute provides: "A license shall be purely a personal privilege, * * * and shall not constitute property, * * *." (Ill. Rev. Stat. 1951, chap. 43, par. 119.) The right to deal in intoxicating liquors is not an inherent right, but is always subject to the control of the State in the legitimate exercise of its police power. (*O'Connor* v. *Rathje,* 368 Ill. 83.) Legislation with respect to liquor traffic does not come within the protection of the fourteenth amendment to the Federal constitution unless it is apparent that its real object is not to protect the community or to promote the general well-being but, instead, under the guise of police regulation, to deprive the owner

of his liberty or property without due process of law. (*Barbier* v. *Connolly,* 113 U.S. 27.) In *People ex rel. Fitzgerald* v. *Harrison,* 256 Ill. 102, this court, declaring that the business of selling intoxicating liquor is attended with danger to the community and is a recognized subject for regulation by the police power of the State, said, "There is no inherent right to carry it on and it may be entirely prohibited." In *Great Atlantic and Pacific Tea Co.* v. *Mayor and Comrs. of the City of Danville,* 367 Ill. 310, this court said: "The right to engage in the liquor traffic is not an inalienable right guarded by the organic law. It is not a right of citizenship nor one of the privileges and immunities of citizens of the United States. It involves no constitutional right which is violated by the mere curtailment or termination of its exercise." And, more recently, in *Gibbons* v. *Cannaven,* 393 Ill. 376, we said: "In the exercise of the police power, the legislature may enact laws for the purpose of protecting the health, morals and safety of the people, either by prohibiting traffic in intoxicating liquors or licensing it, or permitting it under any conditions which, in their judgment, they may approve."

It is readily apparent that the cases relied upon by Hornstein, *Klafter* v. *State Board of Examiners of Architects,* 259 Ill. 15, (revocation of an architect's license); *People for use of State Board of Health* v. *McCoy,* 125 Ill. 289, (revocation of a license to practice medicine); and *Phipps* v. *Wilson,* 186 Fed. 2d 748, (disbarment), are not in point.

Revocation of a liquor license without a hearing is not a novel procedure. "In the absence of a statute providing otherwise, a liquor license may be revoked by licensing officers acting under statutory authority with or without notice to the licensee." (30 Am. Jur., Intoxicating Liquors, sec. 147.) Revocation at the discretion of the mayor, with the license terminating "absolutely upon the notice of said

revocation being left at the bar," was standard under our earlier liquor laws, and was sustained against constitutional attack. (*Malkan* v. *City of Chicago*, 217 Ill. 471; *Schwuchow* v. *City of Chicago*, 68 Ill. 444; *Boerner* v. *Thompson*, 278 Ill. 153.) See, also, *State* v. *Corron*, 73 N.H. 434, 62 Atl. 1044; *Wallace* v. *Mayor, etc., of the City of Reno*, 27 Nev. 71, 73 Pac. 528. In *Darling Apartment Co.* v. *Springer*, 25 Del. Chan. 420, 22 Atl. 2d 397, the court said, "Neither by express language nor by compelling implication does it appear that the Legislature conditioned the power of revocation or suspension on notice and hearing of charges. * * * Summary action is often regarded as necessary in matters affecting the public health and morals; * * * No legal or constitutional right is invaded by the summary exercise of the power." We hold, therefore, that the Liquor Control Act, in providing for summary revocation of a liquor license by the local officer, with a right to an appeal to the State commission and a trial *de novo* of the propriety of the action of the local officer, violates no constitutional rights.

The issue which was before the Illinois Liquor Control Commission upon appeal under the statute was the propriety of the action of the local liquor commissioner in revoking Hornstein's license. (Ill. Rev. Stat. 1951, chap. 43, par. 153.) Upon that issue evidence was received which tended to show that gambling operations were conducted in conjunction with Hornstein's tavern, and that the State's Attorney had conducted a gambling raid of the premises three days before the license was revoked. Because of his belief that a formal hearing was a prerequisite to a valid revocation by a local commissioner, the trial judge held that the Illinois Liquor Control Commission was not in a position to conduct a hearing *de novo*, but should have reversed the ruling revoking Hornstein's license. As we have pointed out, this view was incorrect. As a result of

it, however, there has been no review under the Administrative Review Act, and the cause must therefore be reversed and remanded for further proceedings.

Certain questions which arose before the trial court will arise again, and it is therefore appropriate that we express our views concerning them. The circuit court found that the State commission erred in permitting Hornstein to be called in rebuttal as a witness because his constitutional privilege against self-incrimination was thereby violated. Apart from the doubt which exists on the record as to whether a claim of constitutional right was ever actually made, his finding was erroneous. While Hornstein has a constitutional privilege against self-incrimination, he has no constitutional right to operate a tavern; it is that right which is in issue here. The terse statement of Mr. Justice Holmes in *McAuliffe* v. *Mayor, etc., of the City of New Bedford,* 155 Mass. 216, 29 N.E. 517, discussing the removal of a policeman from office, is apt: "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." In the present case, Hornstein may have his privilege against self-incrimination if he sees fit to claim it, but the statute under which he asserts his right to a license provides that "the failure of the licensee to submit to such an examination * * * shall constitute an admission that he has violated the provisions of this Act." (Ill. Rev. Stat. 1951, chap. 43, par. 153.) And the cases previously cited fully demonstrate the validity of attaching such a legislative condition to a liquor license.

Hornstein argues in this court, however, that his objection to being called as an adverse witness rested, not upon constitutional grounds, but upon the ground that "the Civil Practice Act [section 60,] does not apply in these proceedings." The argument seems to be that section 8 of article VII of the Liquor Control Act, to the effect that "In any hearing before the State commission, the licensee shall submit to examination * * * in like manner as before the

local commission," (Ill. Rev. Stat. 1951, chap. 43, par. 153,) regulates the calling of the licensee as a witness so as to preclude the operation of section 60 of the Civil Practice Act. But if we assume this to be so, power to have the licensee called as a witness still exists. There is no requirement that an examination under section 8 of article VII must be by the State commission itself. Indeed, the statute contemplates the contrary. It provides that the examination shall be "in like manner as before the local commission," and section 4 of article IV in describing the authority of a local commissioner specifies that, "[He] shall have the right to examine, or *cause to be examined,* under oath, any applicant * * *." (Emphasis supplied.) The additional argument that questions put to the licensee must be confined to the particular period for which the license has been issued finds no support in the statute and is without merit.

The order of the circuit court of Sangamon County is reversed and the cause remanded, with directions to proceed in accordance with the views expressed in this opinion.

*Reversed and remanded, with directions.*