161 So.2d 873 (1964)
Carol Antoinette Malooley LUND, Appellant,
v.
Eric John LUND, Appellee.
No. 3936.
District Court of Appeal of Florida. Second District.
March 25, 1964.
*874 Law Offices of J. Russell Hornsby, Orlando, for appellant.
Berson, Barnes & Inman, Orlando, for appellee.
HODGES, JOHN G., Associate Judge.
The wife filed in the court below her complaint for divorce on the ground of cruelty. The husband answered, denying the plaintiff's allegations and filed a counterclaim for divorce on the ground of adultery. Both parties prayed for custody of their children.
After hearing the cause, upon many pleadings, in which somewhat voluminous testimony was produced, the chancellor filed a concise but comprehensive and reflective memorandum opinion setting forth his findings, conclusions and final decree, granting a divorce to the husband and awarding to him custody of the two minor children of the parties and to the wife custody of an unborn child. The plaintiff-appellant wife, counter-defendant below, raises the following questions here. Did the lower court err:
1. In finding that the wife failed to prove the allegations of her complaint?
2. In awarding custody of the two minor children to the husband?
3. In granting the husband a divorce on the ground of adultery?
The final decree arrives here with a presumption of verity and correctness, Picchi v. Picchi, Fla. 1958, 100 So.2d 627; Bennett v. Bennett, Fla.App. 1962, 146 So.2d 588; Katz v. Katz, Fla.App. 1964, 159 So.2d 241, and it is incumbent upon the party urging error to demonstrate same. Vaughn v. Stewart, 1939, 140 Fla. 88, 191 So. 693; Lynch v. Coppola, Fla.App. 1961, 129 So.2d 183.
The first two questions posed are easily answered in the negative because there is ample substantial evidence in the record to sustain the chancellor's findings and conclusions, and it has not been shown that he abused his discretion in the proceedings.
The third question involves the contention of the plaintiff-wife that her admission, when questioned on the point as an adverse witness, of having had extra-marital sexual intercourse was forthcoming only after she had invoked privilege under Section 12, Declaration of Rights, Florida Constitution, F.S.A. and had not receded from that protective cover until the court stated that the defendant-husband's oral motion to dismiss her complaint would be granted unless she answered the pertinent question.
We shall answer this contention even though there is, in our opinion, other evidence in the record upon which the chancellor's findings of adultery might properly have been based. See McMillan v. McMillan, 1935, 120 Fla. 209, 162 So. 524; Engebretsen *875 v. Engebretsen, 1942, 151 Fla. 372, 11 So.2d 322; and Heath v. Heath, 1932, 103 Fla. 1071, 138 So. 796, 82 A.L.R. 537.
In the case of Stockham v. Stockham, Fla.App. 1963, 159 So.2d 481, decided after the appeal in the instant case was perfected, this court held that when a plaintiff-wife refused to answer requests for admissions, based upon an affirmative defense, on the grounds that the answers might tend to incriminate her, the defendant-husband was entitled to have her complaint dismissed. The plaintiff-wife in that case relied upon the opinion of the court in Blais v. Blais, Fla.App. 1959, 112 So.2d 860. There, the same question was presented except that no motion was filed requesting the court to strike the plaintiff's testimony, dismiss his complaint or deny him the equitable relief sought. The appellate court held, ergo, that the question was premature.
This court held that the enumerated relief should have been granted as applied to the circumstances, under Rule 1.30(b), Fla.R.C.P., 30 F.S.A., in the Stockham case, since such relief had been requested and the Blais ruling supported the inference that it was properly allowable. In the Stockham opinion, the court stated:
"* * * It would indeed be an anomaly if a plaintiff could bring a divorce action and then refuse to answer requests for admissions, based upon an affirmative defense, on the grounds that her answers might tend to incriminate her. There must be certain sanctions against such conduct or the defendant will be placed at an extremely unfair advantage. * * *"
The court further adopted language from Annest v. Annest, 1956, 49 Wash.2d 62, 298 P.2d 483, as follows:
"`A witness who declines to answer a proper question upon the ground that it would tend to incriminate him, has not told the whole truth, which his oath as a witness requires. He will not be permitted to testify to part of the truth only. When a party claims the privilege of not answering a proper question, the court may dismiss his action or strike his testimony. * * *'"
In line with the sound reasoning applied in the cases cited, we hold that the plaintiff in this case, who declined to answer a proper question on the ground that her answer might tend to incriminate her, exposed her complaint to dismissal and her testimony to be stricken from the record.
In stating that the plaintiff's complaint would be dismissed if, behind the shielding cloak against self-incrimination, she persisted in refusing to answer the question relating to adultery, the able chancellor simply indicated that he would do precisely what he had a perfect right and duty to do and thereby committed no reversible error.
The final decree is, therefore, affirmed.
ALLEN, Acting C.J., and SHANNON, J., concur.