**Herman BAUER, Appellant,**

v.

**STERN FINANCE COMPANY, Ben Stern, Don W. Sweeten and Arthur Camenzind, Appellees.**

No. 53280.

Supreme Court of Iowa.

July 24, 1969.

James Furey and Leighton A. Wederath, Carroll, for appellant.

Joseph Z. Marks, Des Moines, for appellees.

LeGRAND, Justice.

This controversy involves relatively simple facts which have been unnecessarily complicated by a prolix record including 210 pages of pleadings, motions and rulings. Much of this could have been omitted.

The principal dispute concerns the interpretation and effect of summary judgment rule 237, Rules of Civil Procedure, which was extensively amended effective July 1, 1967.

The plaintiff appeals from a summary judgment entered against him by the trial court dismissing his petition on two grounds: First, that plaintiff has refused to furnish important information to defendant either by deposition or at the hearing on summary judgment because such information would tend to incriminate him; and second, that there was no genuine issue as to any material fact and that defendant was entitled to a summary judgment as a matter of law. We discuss these grounds together.

Prior to the 1967 amendment to rule 237, summary judgment relief was available only to a plaintiff. International Milling Co. v. Gisch, 256 Iowa 949, 955, 129 N.W. 2d 646, 649. The amendment makes it applicable to plaintiff and defendant alike.

The background of this litigation is a bitter one. By a series of transactions extending from 1962 to 1964, plaintiff purchased 96 head of cattle, all of which he financed through defendant Stern Finance Company. On or about February 9, 1966, Don W. Sweeten, one on Stern's employees, visited plaintiff's farm to make a routine check of his employer's security. He was able to locate only 34 cows on plaintiff's farm. He immediately sought the plaintiff out at his place of employment, made inquiry about the missing security, and, with plaintiff, returned to the farm for further investigation. Six more animals were then located, making a total of 40, and leaving 56 still unaccounted for.

Plaintiff refused to divulge any information concerning them. Sweeten claims he thereupon told plaintiff Stern Finance Company would be obliged to declare the entire amount of the loan due, as it was entitled to do under the terms of the various security instruments.

Arrangements were made for one Arthur Camenzind, a cattle broker from Nebraska, to purchase plaintiff's livestock. He visited the farm, at which time Sweeten was present during part of the negotiations. Together the three worked out a deal by which Camenzind purchased the 40 cows for $5150.00. He gave a check for this amount to plaintiff, who endorsed it and delivered it to Sweeten to be applied on plaintiff's indebtedness with Stern. Prior to the consummation of this transaction Sweeten had assured plaintiff Stern would claim no deficiency of him, although the amount of the check did not cover the entire debt.

Whether the cattle were sold to Camenzind by plaintiff or were first repossessed by defendant Stern Finance Company and then sold to Camenzind is one of the areas of disagreement between the parties.

In any event shortly after Camenzind purchased the cattle, plaintiff brought action against Stern Finance Company and Ben Stern individually in seven counts. Upon motion, five of these were dismissed by order of court.

Of the remaining two counts one asserted a right of recovery because the defendants "wrongfully, illegally, and tortiously took possession of said cattle from plaintiff." The other claimed damages for wrongful sale and disposition of the animals after the alleged seizure and for improper application of the proceeds from their sale.

Defendants Stern Finance Company and Ben Stern took plaintiff's deposition, during which plaintiff on approximately 20 occasions refused to answer questions on the ground he would thereby tend to incriminate himself. These questions dealt principally with the location of the 56 missing cattle and how they had been disposed of by plaintiff. On the same ground plaintiff refused to produce certain books and records requested during the course of his deposition.

I. This exercise by plaintiff of his privilege against self-incrimination is the principal issue involved. The Sterns filed a motion for summary judgment on both counts of plaintiff's petition. The motion alleged that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the attached affidavit and exhibit, show that there is no genuine issue for trial and that the defendant is entitled to judgment as a matter of law." In support thereof the Sterns set out substantially the facts above related.

Attached to the motion was the affidavit of one Lorna Billyard, assistant secretary of defendant corporation, verifying much of the factual matter stated in the motion. Subsequently the affidavit of Don W. Sweeten was filed, further substantiating the recitations of the motion for summary judgment and setting out in detail the manner in which the shortage of security was discovered, the action taken by the defendant corporation thereafter, and the circumstances under which the security was sold and the proceeds applied.

By way of resistance to the motion, plaintiff filed his affidavit asserting the cattle had been taken from him by Stern Finance Company; that Don W. Sweeten had for some days prior thereto "embarrassed and pressured him" into turning over his cattle to Stern Finance Company; that he did not sell his cattle to anyone, but rather they were repossessed by the finance company; that when he endorsed the check it was not his free and voluntary act, but was the result of pressure, threat and coercion practiced by the said Arthur Camenzind on behalf of and as a representative of defendant; that he felt "defeated, strong-armed and unable to pur-

sue my own will in the matter"; that his account with Stern Finance Company was not delinquent; and that Stern Finance Company failed to give him proper credits for refunds, insurance premiums and unearned interest.

There are other allegations in the affidavit but these are sufficient to show its general tenor.

Rule 237 now provides in part as follows:

"* * * * * *

"(b) *For defending party.* A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

"(c) *Motion and proceedings thereon.* The motion shall be filed at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may file opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

"* * * * * *

"(e) *Form of affidavits; Further testimony; Defense required.* Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or filed therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, further affidavits, or oral testimony. *When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."* (Emphasis added.)

This rule is based on rule 56 of the Federal Rules of Civil Procedure and there are only minor differences between that rule and ours.

■■■■ The purpose of all summary judgment rules is to avoid useless trials. A party with a just cause should be able to obtain judgment promptly and without the delay and expense of a trial, where there is no genuine fact issue to be decided. Humboldt Livestock Auction, Inc. v. B & H Cattle Co., Iowa, 155 N.W.2d 478, 484, and citations. In ruling on a motion for summary judgment, the court's function is to determine whether such a genuine issue exists, not to decide the merits of one which does.

The rule provides that a party may not "rest upon the mere allegations or denials of his pleading." He must set forth specific facts showing there is a genuine issue. He cannot merely say there is one; but it must appear "by affidavits or otherwise" that this is the case.

■■■ It is clear the trial court's ruling granting summary judgment for defendants Stern Finance Company and Ben Stern was on the ground that plaintiff had refused to supply vital and material information both in his deposition and in the hearing on the motion. As already pointed out, this refusal was on the ground the answers would tend to incriminate him.

Plaintiff insists he was justified in refusing to answer under the protection of Amendment 5, Constitution of the United

States. This is conceded, and the trial court so ruled. This does not mean, however, that plaintiff may rely on his constitutional safeguard and yet go forward with his claim against another when that claim depends on information he refuses to divulge. Plaintiff is not the only one who has rights. Under rule 237, defendant may demand disclosure of specific facts which plaintiff relies on. If plaintiff does not comply with that rule—for reasons which are compelling to him—and thereby prevents a genuine issue of fact from arising, his adversary in a proper case is entitled to summary judgment as to those issues.

One of the basic disputes here concerns the improper disposition by plaintiff of cattle covered by certain security instruments held by defendant Stern Finance Company. Facts concerning this issue are vital, both to the plaintiff's cause of action and to the preparation for trial of those defending against it. Clearly plaintiff has violated the provisions of rule 237, particularly subdivision (e), which states a party "may not rest upon the mere allegations or denials of his pleading but * * * must set forth specific facts showing that there is a genuine issue for trial."

II. We must now consider plaintiff's argument that the use of his refusal to testify as a ground for entering summary judgment against him is a denial of due process. He says this penalizes him for the exercise of his constitutional right against self incrimination.

■ We have several times held that the refusal to testify in a civil case because such testimony might incriminate him may be used against a party in that action. Amana Society v. Selzer, 250 Iowa 380, 388, 389, 94 N.W.2d 337, 342 and citations; Allen v. Lindeman, 259 Iowa 1384, 1396, 148 N.W.2d 610, 617.

In the Selzer opinion, at page 389 of 250 Iowa, at page 342 of 94 N.W.2d Reports, we said, "In summary, we hold defendant's failure or refusal to deny the facts pleaded * * * [on the ground the answers might tend to incriminate him] is, under rule 102, *deemed an admission thereof, and this application of the rule in the present suit does not deny defendant due process of law.*" (Emphasis added.)

Under rule 237, plaintiff's failure or refusal to answer material questions prevents the existence of any genuine issue of fact on those matters and defendant's affidavit must be taken as true to that extent.

In addition to that cited and discussed in Amana Society v. Selzer, supra, there is also other authority lending support to this conclusion. 6 Moore's Federal Practice, section 56.15, pages 2281–2286; Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483, 486; Annest v. Annest, 49 Wash.2d 62, 298 P.2d 483, 484; Lund v. Lund, Fla. App., 161 So.2d 873, 875; Meyer v. Benelli, 197 Kan. 98, 415 P.2d 415, 418; Levine v. Bornstein, 13 Misc.2d 161, 174 N.Y.S.2d 574, 577, 578; Kisting v. Westchester Fire Insurance Co., (U.S.Dist.Ct., W.D. of Wisc.), 290 F.Supp. 141, 149; Laverne v. Incorporated Village of Laurel Hollow, 18 N.Y.2d 635, 272 N.Y.S.2d 780, 219 N.E.2d 294, 295; Stockham v. Stockham, Fla., 168 S.2d 320, 322, 4 A.L.R.3d 539; Hornstein v. Illinois Liquor Control Commission, 412 Ill. 365, 106 N.E.2d 354, 358; Annotation, 4 A.L.R.3d 545.

■ Such a result is not designed to punish plaintiff for his refusal to answer. It is simply a recognition of the provisions of rule 237 that the absence of a genuine issue of fact—from whatever cause—justifies in appropriate cases the entry of summary judgment. The *reason* for such absence is incidental; the *fact* of the absence is determinative.

When plaintiff says he is being punished for exercising his right to remain silent, he is overlooking the real matter before us: that his silence, justifiable or not, prevents a justiciable issue from arising on the question involved.

However, it is obvious from what we have already said plaintiff's refusal to answer should be considered under rule 237 only as to those matters upon which it directly bears. It is only then the refusal affects the existence of a genuine fact issue.

This is important here because the two counts of plaintiff's petition present completely different theories. We agree with the trial court as to Count I, but find plaintiff should have his trial on Count II.

III. Count I relies entirely on the assertion defendant Stern Finance Company "wrongfully, illegally and tortiously" seized plaintiff's cattle. Defendant denies any seizure at all and asserts the cattle were voluntarily sold by plaintiff to Arthur Camenzind.

However, assuming for present purposes that the cattle were seized or repossessed by defendant Stern Finance Company, plaintiff to recover must show this to have been a wrongful or tortious act. But the facts necessary, on the one hand, to prove it was wrongful and, on the other, to successfully defend by showing it was justified are the very facts plaintiff refuses to disclose.

As the record stands defendant has made a full statement by affidavits, as provided in rule 237, which plaintiff refuses to meet in the manner subsection (e) of the rule requires. Under such circumstances the question of whether seizure of the cattle was wrongful presents no genuine issue of fact. Defendant's affidavits stand uncontroverted. We believe entry of summary judgment on Count I was proper.

IV. Count II, however, presents entirely different issues, asking damages for the alleged wrongful conduct of defendants after the alleged seizure in disposing of the cattle and in accounting for the purchase price.

We point out our holding as to Count I is simply that plaintiff cannot go forward with that action based on *wrongful* repossession because there is no fact issue on that question. But this does not preclude a finding under Count II that there was in fact a repossession of the cattle.

Count II alleges there was and that defendants sold the cattle to Camenzind but "failed to use reasonable and diligent efforts to obtain the best and highest price for said animals; that the cattle were wrongfully disposed of by defendants and that defendants acted maliciously and with intentional disregard of the rights of plaintiff." He also claims he did not receive credit for various rebates, refunds, and unearned interest he was entitled to.

Eliminating the question of *wrongful* repossession, we cannot say no genuine issue of fact remains as to the dispute concerning whether the cattle were repossessed by defendants or were sold by plaintiffs; nor as to whether plaintiff obtained full credit for all items he disputes. We need not, nor do we, express any opinion on plaintiff's right to recover on the cause of action set out in Count II. We say only that there are genuine issues of fact to be decided and that plaintiff's refusal to respond to questions as heretofore noted does not in any way affect these issues.

We therefore hold the trial court was wrong in entering summary judgment on Count II. We reverse as to that part of the order and remand for trial on the merits.

So that there may be no misunderstanding of our holding, we specifically find plaintiff is precluded from asserting any claim based on the alleged wrongful repossession of cattle; and for the purposes of trial, it shall be taken as established, if it should be found defendant Stern Finance Company repossessed plaintiff's cattle, such repossession was proper and authorized under the security instruments executed by plaintiff.

V. We still have the status of two other defendants, Don W. Sweeten and Arthur Camenzind, to decide. They were not named in the proceedings as originally filed, and it was sought to bring them in

by amendment and service of original notice. Each filed a special appearance, and each was sustained. Neither of these defendants was a party to the summary judgment proceedings, and it therefore does not inure to their benefit.

The two special appearances present entirely different problems. We consider first that of Don W. Sweeten.

As already noted, Sweeten was not made a defendant when this action was started on July 21, 1966. An original notice was served on him on January 3, 1967. The original notice stated among other things the following:

" * * * that a petition is now on file * * * which petition prays for judgment against you for

"$32,000.00 on his first cause of action
"$26,847.50 on his second cause of action
"$35,000.00 on his third cause of action
"$32,000.00 on his fourth cause of action
"$35,000.00 on his fifth cause of action
"$35,000.00 on his sixth cause of action
"35,000.00 on his seventh cause of action
* * * "

■ Sweeten filed a special appearance challenging the jurisdiction of the court on the ground that no petition was on file at the time notice was served on him "which comports with the notice served upon him and which demands the affirmative relief against him as shown in the purported notice served upon him."

If there is any pleading which amounts to a petition against the defendant Sweeten as described in the original notice above set out, it must be found in the amendment of December 10, 1966. As to the defendant Sweeten this amendment makes the following allegations:

"1. That the defendant Don W. Sweeten is a resident of Polk County, Iowa * * *

* * * * * *

"7. That said cattle were reduced to the possession of the defendant Stern Finance Company and Ben Stern by the defendant Don W. Sweeten, the agent, servant and employee of Stern Finance Company coming upon the premises of the plaintiff and asserting control and dominion over said cattle and selling the same to the defendant Art Camenzind also known as Arthur Camenzind.

* * * * * *

"WHEREFORE, plaintiff prays as in his original petition."

The prayer in the original petition was for judgment against the defendants Stern Finance Company and Ben Stern, who at that time were the only defendants against whom suit had been brought. We are constrained to hold that there was no petition asking personal judgment against Don W. Sweeten at the time notice was served upon him and at the time the notice stated that such a petition was on file. It is interesting to note that even the amendment of December 10, 1966, makes no allegation of wrongful conduct against Mr. Sweeten, nor does it set out any allegations which would justify a judgment against him. It recites only that Stern Finance Company and Ben Stern took possession of the cattle through the actions of their agent, servant and employee Don Sweeten.

We have serious doubts that the amendment of December 10, 1966, was intended to state a cause of action against Don W. Sweeten. It is more likely that plaintiff intended only to plead additional facts concerning his claim against Stern Finance Company and Ben Stern. The fact that service of original notice was not made upon Sweeten until almost a month after the filing of the amendment lends further support to this conclusion. Furthermore this is tacitly admitted by plaintiff in his brief and argument when he relies upon a later amended and substituted petition filed March 7, 1967, long after service of the original notice but before ruling thereon, as being the instrument in which he asks for judgment against Sweeten.

We hold plaintiff did not comply with our rule requiring that a petition must be

on file as stated in the original notice. There still remains the troublesome question whether this is properly raised by special appearance or whether it should be done by motion to dismiss. Our cases are not entirely in harmony, but our recent pronouncement in George v. Gander, Iowa, 154 N.W.2d 76, 78, 79, and cases therein discussed, appears sufficiently broad to cover the question here under consideration.

VI. The special appearance of Arthur Camenzind presents a different, and less doubtful, problem. His special appearance raises several jurisdictional grounds, but the only one we need discuss is that which challenges the method of service of original notice upon him.

■ Camenzind is a resident of Omaha, Nebraska. The original notice was served upon him there. It asked personal judgment against him. Camenzind claims such service does not confer jurisdiction on our courts to render such judgment and we agree.

We would have thought the rule that personal service of original notice outside the state of Iowa upon a non-resident of the state of Iowa conferred no jurisdiction on our court to enter personal judgment would not be disputed at this late date. This matter is extensively discussed in Allen v. Allen, 230 Iowa 504, 298 N.W. 869, 136 A.L.R. 617. For a more recent holding to the same effect see Emery Transportation Company v. Baker, 257 Iowa 1260, 1263, 1264, 136 N.W.2d 529, 531.

Plaintiff seeks to hold Camenzind responsible for a tort committed within this state. If Iowa courts have authority to make Camenzind answer for his alleged wrong, it must be because he has been subjected to our jurisdiction by compliance with section 617.3, Code of Iowa, the so-called long arm statute, one purpose of which is to provide relief against non-residents who could not otherwise be brought to bar. Plaintiff, however, has made no effort to comply with the provisions of this statute. Not only that, he claims the method selected by him to obtain jurisdiction over Camenzind is better than that devised by the legislature. While we concede plaintiff's right to hold this opinion, we must nevertheless decide this controversy on what the legislature said.

Section 617.3 provides that service shall be made upon a non-resident under circumstances such as exist here in the following manner:

"Service of such process or original notice shall be made (1) by filing duplicate copies of said process or original notice with said secretary of state * * * and (2) by mailing to the defendant * * * by registered or certified mail, a notification of said filing with the secretary of state * * *."

■ We have held on numerous occasions that when the legislature sets up an extraordinary method of securing jurisdiction over non-residents of this state, there must be clear and complete compliance with the procedure established by the statute. Fagan v. Fletcher, 257 Iowa 449, 451, 133 N.W.2d 116, 117, and citations; Andersen v. National Presto Industries, 257 Iowa 911, 919, 135 N.W.2d 639, 644; Esterdahl v. Wilson, 252 Iowa 1199, 1203, 110 N.W.2d 241, 243, and citations; Kraft v. Bahr, 256 Iowa 822, 826, 128 N.W.2d 261, 263.

Plaintiff made no effort to comply with the provisions of this statute and his purported service of original notice in the state of Nebraska was insufficient to confer jurisdiction over the person of defendant Arthur Camenzind, whose special appearance was properly sustained.

VII. Upon motion of the defendants Stern Finance Company and Ben Stern, the trial court assessed as part of the costs against plaintiff an attorney fee of $150.00 in favor of defendants' attorney for reasonable expense incurred by them as a result of the "bad faith resistance and affidavit filed by the plaintiff in resistance to the motion for summary judgment."

Rule 237(g) provides, "Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt."

In view of our holding under Division IV we hold this was error and that part of the decree is reversed.

VIII. We have considered all matters raised by plaintiff's appeal. Except as already noted we find no merit in them.

Affirmed in part, reversed in part, and remanded.

All Justices concur except RAWLINGS and BECKER, JJ., who dissent.

RAWLINGS, Justice (dissenting in part).

I concede correctness of a reversal with regard to Count II of plaintiff's petition but cannot agree with the reasoning in Divisions I, II and III of the majority opinion or result there reached, and upon that basis alone respectfully dissent.

The penalty authorized under rule 237, Rules of Civil Procedure, as applied by the majority, makes it clear to me plaintiff was here confronted with the dilemma of surrendering his right to refuse to answer interrogatories propounded on the ground of self-incrimination, or assert such privilege and thereby subject himself to loss of right to proceed with trial of the case against Stern Finance Co. and Ben Stern under Count I of his petition. Plaintiff elected to stand on his rights under the Fifth Amendment, and what is in effect a resultant summary penalty is now espoused by the majority.

That may at one time have been deemed proper, but in my humble opinion it is now clearly contrary to recent holdings in Gardner v. Broderick, 392 U.S. 273, 88 S. Ct. 1913, 20 L.Ed.2d 1082; Application of Gault, 387 U.S. 1, 42–50, 87 S.Ct. 1428, 1451–1455, 18 L.Ed.2d 527; Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed 2d 574; Garrity v. State of New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653; and Murphy v. Waterfront Commission, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678. See also Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118.

An examination of these cases reveals the Fifth Amendment is today applicable to any federal or state proceeding, be it criminal, civil administrative, judicial, investigatory, or accusatory in nature, and must be held to afford the mandated protection without penalty.

In this vein the court declared, in Spevack v. Klein, supra, at 385 U.S. 514–515, 87 S.Ct. 628: "We said in Malloy v. Hogan [supra]:

" 'The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, *and to suffer no penalty * * for such silence.'* 378 U.S., at 8, 84 S.Ct., at 1493.

*"In this context 'penalty' is not restricted to fine or imprisonment. It means, as we said in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'* Id., 380 U.S. at 614, 85 S.Ct., at 1233. We held in that case that the Fifth Amendment, operating through the Fourteenth, 'forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.' Id., 380 U.S. at 615,

85 S.Ct. at 1233. What we said in Malloy and Griffin is in the tradition of the broad protection given the privilege at least since Boyd v. United States, 116 U.S. 616, 634–635, 6 S.Ct. 524, 534–535, 29 L.Ed. 746, where compulsory production of books and papers of the owner of goods sought to be forfeited was held to be compelling him to be a witness against himself.

" 'It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half of their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.' 116 U.S., at 635, 6 S.Ct., at 535." (Emphasis supplied)

And as stated in Gardner v. Broderick, supra, loc. cit., 392 U.S. 276, 88 S.Ct. 1915: "The privilege [Fifth Amendment] may be waived in appropriate circumstances if the waiver is knowingly and voluntarily made. Answers may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against the person testifying. Counselman v. Hitchcock, supra, 142 U.S. 547 at 585–586, 12 S. Ct. 195 at 206–207, 35 L.Ed. 1110; Murphy v. Waterfront Commission, supra, 378 U.S. at 79, 84 S.Ct. at 1609."

See also Amana Society v. Selzer, 250 Iowa 380, 384, 94 N.W.2d 337.

Additionally section 622.14, code, 1966, provides: "When the matter sought to be elicited would tend to render a witness criminally liable, or to expose him to public ignominy, he is not compelled to answer, except as otherwise provided."

But plaintiff in the case at bar did not waive his privilege. Futhermore the majority refers to no statute or rule which would have afforded plaintiff coextensive immunity from any criminal consequences had he answered the questions asked of him, and I find none.

Most assuredly the threatened loss of right to proceed with civil litigation to trial of a case on its merits, regardless of ultimate result, is a powerful form of compulsion to make a litigant speak, to relinquish his constitutional right to remain silent when by speaking he would provide a link in the chain which might be used to prove criminality.

It is to me evident plaintiff is here subjected to a costly price for having exercised his privilege against self-incrimination.

And it is of no consequence that our Rules of Civil Procedure permit imposition of sanctions for failure or refusal to comply with them. Neither they nor any statute can override, nullify or transcend constitutionally guaranteed rights, privileges or immunities. See in this regard Article VI, United States Constitution; Iowa Motor Vehicle Association v. Board of Railroad Commissioners, 207 Iowa 461, 466, 221 N. W. 364, 75 A.L.R. 1; 16 C.J.S. Constitutional Law § 50, page 151; and 16 Am. Jur.2d, Constitutional Law, section 50, page 221.

Actually the question presented in the case before us is not whether the penalizing result reached is authorized by the rules. Rather, it is whether the sanction here applied, as approved by the majority, violates, in effect if not in fact, plaintiff's privilege to stand on his Fifth Amendment rights.

I submit the majority errs in holding, as it does, a summary judgment could properly be entered against plaintiff upon the basis of an exercise of his constitutional privilege against self-incrimination. In

support hereof see also Zonver v. Superior Court, Cal.App., 76 Cal.Rptr. 10; Simkins v. Simkins, Fla.App., 219 So.2d 724; Allred v. Graves, 261 N.C. 31, 134 S.E.2d 186, 189–190; 98 C.J.S. Witnesses §§ 431–433, pages 240–246; and 58 Am.Jur., Witnesses, section 45, page 49.

Upon the basis of the foregoing I would reverse and remand for trial on the merits of plaintiff's entire action against Stern Finance Co. and Ben Stern.

BECKER, Justice (dissenting).

I respectfully dissent.

Use of summary judgment procedures in lieu of the procedures available and rule 134, Iowa Rules of Civil Procedure, seems to me to have prevented an adequate determination of whether a plaintiff's refusal to answer discovery questions on grounds of self-incrimination can result in judgment against him. This procedural mistake (or devise) on the part of the defendant seems to me to make much of the analysis in Justice Rawlings' dissent premature.

When a party refuses to subject himself to discovery procedures the other side has an appropriate remedy. Rule 134, R.C.P. provides full power in the court to consider the situation and take appropriate action. Actions by the court authorized in rule 134(b)(2), R.C.P. include ordering the matters subject to inquiry to be taken to be established, prohibiting the recalcitrant party from supporting or opposing designated claims or defenses, prohibiting introduction of certain evidence, striking pleadings, staying proceedings until the order is obeyed, dismissing the action or any part of it, or entering judgment by default.

Of course, all these things must be done in a manner consistent with constitutional mandates including Amendments 5 and 14 to the Constitution of the United States. The procedures contemplated in rule 134, R.C.P. allow for orderly determination of what, if anything, can or should be done when a party "takes the 5th" during the course of discovery proceedings. Substitution of a motion for summary judgment changes the issues and effectively eliminates much of the discretion lodged in the court by rule 134, R.C.P. Such action should not be tolerated.

As Justice Rawlings' dissent makes plain, the consequences of asserting 5th Amendment rights in discovery proceedings constitute a complicated field. See 4 Moore, Federal Practice, section 26.22(5). I would reverse the summary judgment and remand this case for procedure under rule 134, R.C.P. and for such other action as would be consistent therewith.